# United States Court of Appeals
## For the First Circuit

---

No. 01-1214

GOYA FOODS, INC.,

Plaintiff, Appellee,

v.

ULPIANO UNANUE-CASAL,
a/k/a CHARLES UNANUE,

Defendant, Appellant.
_____

LILIANE UNANUE and KALIF TRADING, INC.,

Defendants.
_____

No. 01-1585

GOYA FOODS, INC.,

Plaintiff, Appellee,

v.

LILIANE UNANUE,

Defendant, Appellant.
_____

ULPIANO UNANUE-CASAL, a/k/a CHARLES UNANUE,
and KALIF TRADING, INC.,

Defendants.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, <u>U.S. District Judge</u>]

---

Before

Boudin, <u>Chief Judge</u>,

Kravitch,[*] <u>Senior Circuit Judge</u>,

and Lynch, <u>Circuit Judge</u>.

---

<u>Jan Alan Brody</u> with whom <u>Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein</u> was on brief for defendant Liliane Unanue.

<u>Charles Unanue</u> on brief pro se.

<u>Ira Brad Matetsky</u>, Legal Department, Goya Foods, Inc., with whom <u>Arturo J. García-Solá</u> and <u>McConnell Valdés</u> were on brief for plaintiff Goya Foods, Inc.

---

December 27, 2001

---

[*]Of the Eleventh Circuit, sitting by designation.

BOUDIN, Chief Judge. This appeal grows out of efforts by Goya Foods, Inc. ("Goya") to enforce a state court judgment against Charles Unanue and to reach certain of his assets held in the name of other parties including his wife Liliane. Prior history is recounted in Goya Foods, Inc. v. Unanue, 233 F.3d 38 (1st Cir. 2000)("Goya I"), cert. denied, 121 S.Ct. 1964 (2001). What follows is a brief history of the background and a summary of events since Goya I.

In 1987, Goya sued Charles in New Jersey state court for breach of a settlement agreement governing an earlier dispute. While the state court suit was ongoing, Charles filed for bankruptcy in 1990 in Puerto Rico and the bankruptcy estate became a party to the New Jersey litigation. In February 1995, the New Jersey court entered a judgment against both Charles and his estate for $6.9 million. In re Unanue, No. M-128817, slip op. (N.J. Super.Ct. Ch. Div. Feb. 23, 1995). On September 12, 1995, the bankruptcy court dismissed Charles' bankruptcy case without granting him a discharge. In re Unanue-Casal, No. 90-04490, slip op. at 5 (Bankr. D.P.R. Sept. 12, 1995).

In November 1995, after the New Jersey judgment was entered, Goya filed an action in the federal district court in Puerto Rico against Charles, his wife, Liliane, and Kalif Trading (a Panamanian corporation organized by Charles), seeking

-3-

to enforce the New Jersey judgment against certain assets nominally held by Liliane or Kalif.  Included among these assets were cooperative shares in Apartment 10A, at 625 Park Avenue in New York City.  Although the shares were titled in Liliane's name, Goya said Charles had paid the purchase price and maintenance fees on the apartment and was the true beneficial owner.

At the outset, Goya moved for provisional remedies to ensure its ability to collect any judgment it might obtain. Goya sought a prohibition on the alienation of certain properties held by Charles, Liliane and Kalif, including the shares in Apartment 10A.  The district court granted the request on November 17, 1995.  The order reads, in part:

> ORDERED that defendants, their agents, employees, and all persons holding property for them or acting in concert with them, are prohibited from alienating or in any way assigning, transferring, selling or otherwise disposing or encumbering any of the real properties, including cooperative shares, listed below
>
> . . . .
>
> 2. Apartment 10A at Park Avenue, New York, New York, cooperative shares pertaining to which are held in the name of Liliane Unanue.

The court issued a second order, similar to the first, specifically prohibiting alienation of the shares to Apartment 10A.  That order reads:

ORDERED that defendant Liliane Unanue, her agents, employees, and all persons holding property for her or acting in concert with her, are prohibited from alienating or in any way assigning, transferring, selling or otherwise disposing or encumbering any of the cooperative shares pertaining to Apartment 10A at Park Avenue, New York, New York, or her ownership interest in the premises represented by such shares.

After denying the Unanues' motions to dismiss the suit for lack of personal jurisdiction, the district court held a 10 day bench trial in July 1997 and issued its opinion on October 31, 1997. The court found that Liliane and Kalif Trading were holding properties for Charles and that Goya could execute against those properties. Goya Foods, Inc. v. Unanue-Casal, 982 F. Supp. 103, 112 (D.P.R. 1997). It discussed, at some length, Apartment 10A, and ruled that Goya has a right "to execute judgment over . . . any residence registered to [Liliane's] name . . . ." Id. However, the court sua sponte stayed enforcement of the judgment pending Charles' appeal to this court and his appeal of the underlying state court judgment (even though the Unanues were not required to post a bond). Id.

The New Jersey appellate court subsequently affirmed the state judgment and the state supreme court denied further review. In re Unanue, 710 A.2d 1036, 1041 (App. Div.), cert. denied, 724 A.2d 801 (1998). In an opinion issued November 28, 2000, this court affirmed the Puerto Rico judgment, making clear that as to Liliane, the judgment reached only those properties

-5-

at issue in the case.  See Goya Foods, Inc., 233 F.3d at 45-46.

The Supreme Court recently denied certiorari.  121 S. Ct. 1964 (2001).

However, in October 2000, while the appeal of the Puerto Rico district court judgment was still pending before us, Goya discovered that the Unanues had secretly sold Apartment 10A in June 1998 for $4.6 million and had directed that $4.2 million of the sale price--apparently the balance after commissions--be wired to a Swiss bank account in Liliane's name.  Goya claims both Charles and Liliane played integral roles in the sale.

When it learned of the sale, Goya filed an ex parte motion, on October 16, 2000, asking the district court for an order directing Charles and Liliane to appear in person and show cause why they should not be held in contempt of court.  The court issued the show cause order on October 20, 2000.  It reads:

> ORDERED that defendant Charles Unanue a/k/a Ulpiano Unanue Casal and defendant Liliane Unanue each shall APPEAR PERSONALLY BEFORE THIS COURT, together with counsel if they be so advised, on the 31st day of October, 2000, at 9:30 a.m. [in the United States Courthouse in Hato Rey, Puerto Rico] and then and there SHOW CAUSE why they should not be held in CONTEMPT OF COURT for their knowing and willful violation of the [November 17, 1995] Orders of this Court, and why the Court should not grant appropriate relief therefor . . .

The court emphasized that Charles and Liliane were to "APPEAR PERSONALLY" in court for the hearing, "such that an appropriate warrant for their arrest and detention shall issue upon their failure to appear as directed." The court also vacated the stay of execution it had placed on its judgment, effective October 27, 2000, unless Charles and Liliane deposited $4.6 million with the court or posted a bond. Further, the court granted Goya's request to conduct discovery regarding the details of the sale of Apartment 10A.

The Unanues were notified of the order on October 24, 2000, at their residence in New York City. Liliane's New Jersey attorney, Jan Brody, was also served with a copy. The Unanues, however, failed to appear at the scheduled hearing; instead, after receiving the show cause order, they apparently left New York for Paris. To this date, they remain fugitives; they have not appeared before the court, nor have they made any effort to pay the underlying judgment.

Two attorneys, whom the Unanues had contacted the day before the hearing, did appear at the hearing. They informed the court they had not yet decided whether to represent the couple and requested additional time to familiarize themselves with the case to make their decision. The court responded:

> The problem that I have here is that there was an
> order entered by this court regarding disposition of

assets, and the order was violated.  We're not talking about the sale of a car; we're talking about the sale of an apartment for over $4 million.  It's a major thing, and the papers on record show that these monies were transferred to some account in Europe . . . And under these circumstances, I would have expected the defendants . . . with or without counsel, to appear here today.

This record is full of instances in which these defendants, out of disrespect for orderly proceedings before a court of justice or because of the fact that they were proceeding pro se in many various instances in which they appeared, the truth of the matter is that they have not complied with a number of dispositions.  And under these circumstances, the only thing that I find prudent to do is one of two things.  Either forget about it and not enforce the order and just assume that they are incapable of complying and forget about it, simply, or just have them arrested.  And I think there are only two alternatives, and the alternative of choice is the order.  We're going to enforce orders of this Court and not allow these things to happen in this case, or any other case.

The only other alternative is to order their arrest.  So what I will do is this.  I will ask the court to issue an arrest warrant against these two individuals.  . . .

There will be no bail, no bail posted, and upon their arrest, these individuals should be transferred to this district, and then I will set a hearing.  This will give them the opportunity now of dealing with counsel and hiring local counsel, because the hearing won't be held today.  I'm just taking a preventive measure, basically to avoid further flouting of the orders of this Court.

Thereupon, bench warrants were issued for the arrest of the Unanues.

The district court also granted Goya's motions, filed the day of the hearing, to execute judgment against another apartment located in San Juan, and to appoint a special master to conduct the sale of the property. In response, Charles and Liliane filed separate motions seeking to vacate all orders related to the contempt proceedings and execution of the judgment. Charles filed his motion, by mail, from France, on November 25, 2000. The court denied the motion on December 5, 2000, and on December 19, 2000, Charles filed his notice of appeal from that denial.

Liliane filed a similar motion to vacate, again, by mail from Europe, on December 18, 2000, captioned "Emergency Motion To Vacate Order of this Court for Ap[p]ointment of Special Master and To Vacate Warrant for Arrest of Liliane Unanue." The motion asked the court to rescind all orders requested by Goya subsequent to October 15, 2000. The court denied the motion on February 21, 2001, and, on March 19, 2000, Liliane filed a notice of appeal from the denial.[1]

---

[1]On February 22, 2001, the district court ordered them to hand over the proceeds from the sale of Apartment 10A to Goya or to the court and granted the special master access to the Puerto Rico apartment. Goya also sought contempt sanctions against the buyer of Apartment 10A, the management company, and the apartment cooperative which approved the sale, asserting that these parties were aware that the sale violated the district court's orders prohibiting alienation. After holding a show cause hearing, the district court held the three parties in

In their appeals, which have been consolidated, Charles and Liliane make virtually identical arguments. They claim the Puerto Rico federal court lacked subject matter jurisdiction over all proceedings in this case. They also claim the court lacked in personam jurisdiction over them in the original proceeding. As to the contempt hearing, they claim they were given insufficient notice. Lastly, they say that the district judge, who presided over all the matters in this long-running case, prejudged the contempt charge and should have recused himself.

At the outset Goya raises two threshold issues, asking this court to dismiss the appeals for want of a final appealable judgment or under the fugitive disentitlement doctrine. The question which, if any, of the district court's rulings is appealable now presents interesting questions. The Unanues purport to appeal from four or five different "orders" of the district court. But we need not determine which of these orders, if any, is final because we dismiss the Unanues' appeals under the fugitive disentitlement doctrine.

---

contempt and ordered them to pay Goya $4.6 million, plus interest and attorneys fees. Goya Foods, Inc. v. Unanue-Casal, No. 386, 2001 WL 505305 (D.P.R. May 4, 2001). An appeal from that decision has been filed.

-10-

There is substantial precedent for dismissing an appeal by one who has fled, Walsh v. Walsh, 221 F.3d 204, 214 (1st Cir. 2000) (collecting cases), cert. denied, 531 U.S. 1159 (2001), even where the appeal is taken from a civil judgment.[2]  But the doctrine is also discretionary rather than automatic and to be applied with caution.  Notably, in Degen, the Supreme Court found that a civil forfeiture suit should not be dismissed merely because the defendant was in flight from a different albeit connected criminal prosecution, and it focused attention on practical considerations particular to the case rather than abstract concerns about court dignity or future deterrence.  517 U.S. at 825-29.

In our own case, several considerations warrant dismissal of the appeals.  First, the underlying conduct with which we are concerned is extremely serious.  The charge is that, in the teeth of explicit orders prohibiting Charles and Liliane from transferring the shares, both of them connived at violating the orders, enriched themselves by $4.2 million, and then fled the jurisdiction.  When instructed to return and defend their actions, they refused to do so.  This is not, in

---

[2]E.g., United States v. Barnette, 129 F.3d 1179, 1186 (11th Cir. 1997); Empire Blue Cross & Blue Shield v. Finkelstein, 111 F.3d 278, 282 (2d Cir. 1997); see also Degen v. United States, 517 U.S. 820, 823 (1996); Walsh, 221 F.3d at 215.

-11-

short, some garden variety discovery dispute but--so far as appears--blatant defiance of explicit court orders.

Second, the appellants' flight is not from some other proceeding, as in Degen, raising the specter that dismissal of the civil appeal is being used to coerce appearance in the criminal case. Here, the flight grows directly out of Goya's effort to enforce its judgment in the civil proceeding which consumed years of litigation; and the appeal is from actions and orders of the district court designed to enforce that very judgment. Indeed, the flight prevents Goya from discovery that might be used to unearth the proceeds of the sale or otherwise enforce its judgment. Empire Blue Cross & Blue Shield, 111 F.3d at 282.

Third, on the most practical level, the appeals are themselves little more than devices to frustrate and delay the enforcement of the original judgment. In general, appellants' main arguments are without merit; indeed, several were made unavailingly in the original action and are now clearly barred by the law of the case. Cohen v. Brown Univ., 101 F.3d 155, 167 (1st Cir. 1996), cert. denied, 520 U.S. 1186 (1997). The only effect of the appeals is to raise the cost for Goya of implementing the judgement, to consume the district court's time, and to provide a vehicle for seeking stays which would

-12-

further delay Goya's recovery if this court were naive enough to grant them. See Barnette, 129 F.3d at 1185-86.

Lastly, flight in this instance is unfortunately not some novel and eccentric event but is of a piece with the conduct of the appellants over a lengthy period. Charles' concealment of assets has a long and distressing history, and Liliane has abetted him, inter alia, by making factual claims as to the origin of the assets that were flatly rejected by the district court as false or unsupported. Goya Foods, Inc., 982 F. Supp. at 103. The violation of explicit orders of the court and the flight to avoid the show cause hearing are only the latest in this series of evasions.

The appellants argue against the doctrine but unpersuasively. They say, for example, that Apartment 10A has not left the jurisdiction and that Goya has pursued other parties (e.g., the buyer of the apartment) for identical amounts. But, of course, the shares in Liliane's hands were the least costly means to realize on the apartment's value, see Barnette, 129 F.3d at 1183, and others who benefitted or assisted may have good-faith defenses. And the very cost to Goya of pursuing others, when the shares were subject to an order in favor of Goya, is itself harm. See Walsh, 221 F.3d at 215.

Goya has filed a motion for an award of costs against Liliane Unanue and her counsel (Jan Allen Brody, Esq. and the Carella Byrne firm) in the amount of no less than $7,500. See 28 U.S.C. §§ 1912, 1927; Fed. R. App. P. 38 (if a court determines that an appeal is frivolous, it may award just damages and single or double costs to the appellee). Goya asserts that its actual expenses have been substantially in excess of this amount but seeks at least token compensation for having to file a lengthy brief addressed to arguments, a number of which are clearly frivolous.

Two such arguments serve as examples. The first is the claim that the district court lacked jurisdiction ab initio because the underlying New Jersey state court judgment was not properly validated in Puerto Rico. In particular, the Unanues say the court failed to hold an exequator proceeding, as required under Puerto Rico law. Ex parte Marquez Estrella, 128 D.P.R. 243 (P.R. 1991)

This claim is identical to one made and flatly rejected in Goya I. Our decision in that case states, in no uncertain terms, that the exequator objection does not go to the court's subject matter jurisdiction. Goya I, 233 F.3d at 47. Further, we held that the Unanues had forfeited the claim because they had not made it in a timely fashion before the district court.

_Id._ at 46. There is no excuse for resurrecting the argument now in an appeal from a subsequent enforcement action.

The Unanues also claim the district judge, who presided over the proceedings from the outset, should have recused himself because he prejudged the contempt charges against them. 28 U.S.C. § 455(a) (1994). As a basis for the claim, they cite the judge's comments at the show cause hearing that "there was an order entered by this court regarding this disposition of assets, and that order was violated." The district judge proceeded to hold that the "record is full of instances in which these defendants, out of disregard for orderly proceedings before a court of justice . . . has not complied with a number of dispositons." The Unanues say these comments, made at the conclusion of the show cause hearing, demonstrate pre-judgment of the contempt charge.

It is well-settled that a judge who expresses preliminary views inside the court, based upon knowledge acquired in court proceedings, is _not_ recusable. _Liteky_ v. _United States_, 510 U.S. 540, 550-51 (1994); _In re Boston Children's First_, 244 F.3d 164, 169 n.9 (1st Cir. 2001); _United States_ v. _Gordon_, 634 F.2d 639, 641 (1st Cir. 1980). This is so plainly settled that the request for recusal is frivolous on the facts of this case. What is more, the request was clearly

-15-

forfeited; it was never made before the district court and appears, for the first time, in Liliane's brief filed nearly eight months after the show cause hearing was held.  United States v. DiPina, 230 F.3d 477, 486 (1st Cir. 2000).

Under these circumstances, we conclude that an award of $7,500 in costs against Jan Alan Brody and the Carella Byrne firm is amply justified in favor of Goya.  Normally, we would not assess even such modest costs based upon the characterization of an individual argument or two, see Kowalski v. Gagne, 914 F.2d 299, 309 (1st Cir. 1990); but the two examples given are extreme and taken with other attempts to reargue matters previously decided or forfeited or otherwise hopeless appear to us to warrant the modest award in question in this instance.  Finch v. Hughes Aircraft Co., 926 F.2d 1574, 1580 (Fed. Cir. 1991); Hill v. Norfolk and Western Ry. Co., 814 F.2d 1192, 1200 (7th Cir. 1987).

Accordingly, it is ordered that the appeals be dismissed based on the fugitive disentitlement doctrine and that Jan Alan Brody and the Carella Byrne firm pay to Goya $7,500 additional costs.  The award of additional costs will run only against counsel, there being no indication that Liliane Unanue was either a lawyer or a party to the selection of arguments.

Accordingly, the appeal is <u>dismissed</u> and the motion for costs is <u>granted</u>.