NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-538

ADOPTION OF BRENNA.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother and the father appeal from decrees issued by a judge of the Juvenile Court finding them unfit and terminating their parental rights to Brenna pursuant to G. L. c. 119, § 26. They both argue that the trial judge violated their constitutional right to due process by deciding the case's outcome before hearing all of the evidence. The father also argues that the judge improperly relied on stale evidence to support the findings of unfitness. Lastly, the mother argues that the judge abused her discretion by declining to order posttermination visitation with Brenna. We affirm.

Background. Brenna was born on August 23, 2020, substance exposed to cocaine and fentanyl. She spent nine days in the neonatal intensive care unit before being placed in a foster home. Both the father and the mother have a history of

_____

[1] A pseudonym.

substance use and addiction, which has interfered with their ability to parent their children. After the mother tested positive for fentanyl during her pregnancy with Brenna, the Department of Children and Families (DCF) requested that she participate in substance abuse treatment, which she attended, but was terminated from due to her failure to follow through with the treatment. The father has a substance abuse disorder dating back prior to his incarceration in 2015 for trafficking heroin. His drug use continued after Brenna's birth. He claims he stopped using drugs in November or December 2020; however, the judge did not credit the father's testimony that he could gain and maintain sobriety without substance use treatment.

On June 4, 2021, neither the father nor the mother attended a status conference scheduled for that day. Their lawyers reported that they had not heard from either parent in at least two months. On September 24, 2021, a best interest trial was held, and again neither parent was present. Findings of unfitness entered, and an adjudication and decree terminating parental rights issued. The mother and the father subsequently filed a motion for relief from judgment pursuant to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), because they claimed not to have had notice of the trial, and further claimed that Brenna's counsel had instructed the mother and the father not to appear for court that day because they were symptomatic for

2

COVID-19.  The court allowed the motion, vacated the decrees and findings of unfitness, and granted a new trial.

The trial took place over eight, nonconsecutive days beginning on March 25, 2022 and concluding on September 22, 2022.  On October 14, 2022, the judge found the mother and the father unfit to parent Brenna, and found that Brenna's best interests would best be served by a termination of parental rights and DCF's adoption plan.  Accordingly, the judge adjudicated Brenna in need of care and protection, and ordered decrees to issue terminating the mother's and the father's parental rights.  In her findings of fact and conclusions of law, the judge explained that in making the unfitness determinations, she considered, among other factors, the mother's

> "ongoing substance use disorder and the fact that it has prevented her from caring for all three of her children; her failure to avail herself of services offered by [DFC] to address her use of substances while pregnant with [Brenna] . . . [and] her pattern of declining services which would address the reasons for [Brenna]'s removal despite repeated attempts by her social worker to engage her."

With respect to the father, the judge considered, among other factors,

> "his longstanding history of substance use disorder and relapse when not in structured treatment; his substantial criminal history involving domestic violence and drug distribution . . . [and] his failure to avail himself of services offered by [DFC] to address his substance misuse

3

and history of domestic violence despite multiple prompts and referrals from his social worker."

The judge left the mother's and the father's posttermination visitation of Brenna to the discretion of Brenna's adoptive parents.

Discussion. 1. Judicial bias. Both parents allege that their due process rights were violated on the grounds that the judge was not presiding over the case with an open mind and had determined the outcome of the trial prior to all the evidence being presented. The father argues that the judge "hastily scrutinized the credibility of the evidence well before the evidence closed" and expressed that the "trial is essentially pointless toward changing her mind." The mother argues that "the judge had prematurely decided that it was in Child's best interest to terminate Mother's parental rights so [Brenna] would be free for adoption by her foster parents."

Having reviewed the complete trial transcript and read the judge's comments in context, we conclude that most of the judge's statements with which the parents took issue were candid assessments by the judge of the evidence before her, and therefore raise no concerns. Two comments, however, characterized the strength of the case as a whole before all of the evidence had been presented. The judge should not have said to the parties that this was not a triable case and should not

4

have questioned why the parties had not resolved the case before the trial.  While we agree that these comments were better left unsaid, we conclude that they did not compromise the integrity of the trial.

The parents take issue with several remarks the judge made at various points regarding the strength of the parents' case. The judge's most concerning comment was that the matter before her was "not a . . . triable case . . . [I]t's not a case that should be getting tried. . . .  I'm just not understanding how there isn't a resolution to this case."  The remaining comments that the parents took issue with concerned the judge's impression of each party's case and the evidence offered in support.  She stated on one occasion that the primary disputed issue in the case was the narrow question of whether the parents had engaged in "any substance use disorder treatment throughout the course of this case."  She went on to say that "there was never sobriety established, and they refused to participate in service[s] -- that's [DCF]'s -- allegation, I should say."

On another day of trial, the judge described the case as a "cut and dry, very simple situation where the people came in, it was an opiate addiction case, and they were asked to do treatment, and they didn't do treatment. . . .  So I'm just confused as to what -- why people think this is a complex case. It just is -- not."

5

The father's counsel raised this issue at trial by way of an oral motion requesting that the judge recuse herself from the case. The mother's counsel orally joined the father's request on the following day of trial.

"A judge's decision not to recuse [her]self is reviewable for abuse of discretion." Commonwealth v. Rivera, 473 Mass. 1003, 1005 (2015). "To rise to the level of requiring disqualification, the bias or prejudice must spring from an extrajudicial source, and not from matters learned from participation in the case." Fogarty v. Commonwealth, 406 Mass. 103, 111 (1989). "[A] judge who expresses preliminary views inside the court, based upon knowledge acquired in court proceedings, is not recusable." Adoption of Darla, 56 Mass. App. Ct. 519, 522 (2002), quoting Goya Foods, Inc. v. Ulpiano Unanue-Casal, 275 F.3d 124, 130 (1st Cir. 2001).

The judge's comments did not demonstrate any impermissible bias requiring that she recuse herself from the case. See, e.g., Adoption of Seth, 29 Mass. App. Ct. 343, 350-351 (1990). The record does not indicate that the judge was improperly influenced by extrajudicial factors, but that she instead was commenting on information she had "acquired in court proceedings." Adoption of Darla, 56 Mass. App. Ct. at 522. The judge is permitted to do this, even if we believe that she could have chosen her words more carefully given the high stakes of

6

the proceedings.  We discern no abuse of discretion in the judge's decision to deny the request that she recuse herself.

The mother and the father's principal argument is that the judge's comments impaired the integrity of the proceedings because the judge suggested that she had predetermined the outcome of the case.  The parties are entitled to present a complete case and the judge must consider all of the presented evidence before deciding any of the issues.  Preston v. Peck, 271 Mass. 159, 163-164 (1930).  A judge is obligated to refrain from making remarks that would "giv[e] a reasonable observer cause to wonder whether the way the judge viewed the evidence, and the inferences she drew from it, were produced by her early judgment rather than by a thoughtful and careful weighing of all the evidence at the end of the trial."  Adoption of Tia, 73 Mass. App. Ct. 115, 123 (2008).  A judge's deviation from this preferred practice, however, does not inherently compromise the fairness of the trial.  See Commonwealth v. Coleman, 390 Mass. 797, 802 (1984) (judge's expression of opinion on issue to be decided does not require disqualification).  We read the judge's comments in the context of the full trial to determine whether the judge improperly and prematurely decided any of the issues in the case.  See Adoption of Georgia, 433 Mass. 62, 65 (2000).

Here, the judge's most troubling comments were that this was "not a case that should be getting tried" and "I'm

7

just not understanding how there isn't a resolution to this case."  Whether or not she believed DCF had made a strong case for seeking termination, the judge should not have characterized the case before her as not worthy of her time.  As we know the judge is undoubtedly aware, the termination of parental rights is one of the most important proceedings that can take place in a court room.  It is therefore especially important that judges take great care not to give the impression that they have prematurely decided a case's outcome.

As to the other comments the parents identified in their briefs, we do not agree that they were improper.  While we do understand, given the significant stakes of this case, that these remarks may have been upsetting to the mother and the father, we also must consider the context of these comments and what issues they referenced.  The trial here took place over eight, nonconsecutive days spanning six months.  Throughout the proceedings, the judge expressed concern about the effect the lengthy trial timeline would have on Brenna.  The judge believed that the mother and the father were unnecessarily prolonging the trial by offering cumulative evidence regarding issues that did not directly address the central reasons DCF had sought termination:  the parents' difficulty maintaining sobriety and their refusal to participate in and complete substance use disorder treatment.  The judge also explained, after the close

8

of evidence, that she had gone back through and listened again to "most of the testimony" from the trial.  This indicates that she had not prematurely reached a decision earlier in the trial and that her mind remained open to all of the presented evidence.  Considering the strength of DCF's case for unfitness and termination and the context in which the judge made her comments, we discern no abuse of discretion in the denial of the parents' recusal motion.

2. <u>Evidence relied on by the judge</u>.  The father argues that the judge improperly relied on stale evidence to support her unfitness findings and decision to terminate the father's parental rights.  The central question in an action to terminate parental rights is whether a parent is unfit, and if so, whether termination is in the best interests of the child.  See <u>Adoption of Ilona</u>, 459 Mass. 53, 59 (2011).  Findings to support a termination of parental rights must be by "clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence."  <u>Adoption of Darlene</u>, 99 Mass. App. Ct. 696, 702 (2021), quoting <u>Adoption of Jacques</u>, 82 Mass. App. Ct. 601, 606 (2012).  "We give substantial deference to a judge's decision . . . and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion."  <u>Adoption of Ilona</u>, <u>supra</u>.

9

"Although 'stale information cannot be the basis for a finding of current parental unfitness . . . [p]rior history . . . has prognostic value.'" Adoption of Jacques, 82 Mass. App. Ct. at 607, quoting Adoption of George, 27 Mass. App. Ct. 265, 268 (1989). The father's principal concern rests with the judge's consideration of a prior instance of domestic violence perpetrated by the father against his ex-girlfriend in 2014. The judge's discussion of this incident, however, was not limited to the event itself, but also addressed the father's current inability "to rectify the conditions that caused harm to his children through lack of participation in offered domestic violence and substance use services."

The judge viewed the father's failure to engage with services to address this incident of domestic violence in the context of the "Father's refusal to address his substance use disorder" and his "refusal to engage in meaningful treatment." She found that "Father engaged in a pattern of declining to avail himself of the services offered to remediate his parenting deficits and facilitate a safe reunification." The judge is permitted to consider such failure to engage in services to support an unfitness finding. See Adoption of Willow, 433 Mass. 636, 645 (2001); Adoption of Lisette, 93 Mass. App. Ct. 284, 285 (2018). She also found that this pattern "create[d] a substantial danger of continued neglect." Accordingly, we view

10

the judge's discussion of the father's 2014 domestic violence incident not as improper reliance on stale evidence, but as an important evaluation of a pattern of behavior, continuing to the present, demonstrating father's unfitness to safely parent Brenna.

3. Posttermination visitation. The mother claims that the judge abused her discretion when she left the decision to Brenna's custodian of whether posttermination and postadoption contact with the mother would be in Brenna's best interest. She argues that visits between the mother and Brenna went well and that ordering visitation would have been in the best interest of Brenna. In her decision, the judge found that Brenna's preadoptive parents would act in Brenna's best interest when determining to what extent postadoption visitation would be allowed.

"The decision to order posttermination or postadoption visits is left to the judge's discretion." Adoption of West, 97 Mass. App. Ct. 238, 247 (2020). An order of postadoption contact is generally reserved for circumstances where the primary "parent-child relationship in the child's life remains with the biological parent" and other adults have not fully assumed that role. Adoption of Vito, 431 Mass. 550, 564 (2000). "The purpose of such contact is not to strengthen the bonds between the child and his biological mother or father, but to

11

assist the child as [s]he negotiates, often at a very young age, the tortuous path from one family to another."  Id. at 564-565.

Here, since the time she was born, Brenna's biological parents have not been the primary parental figures her life. Brenna therefore will not be transitioning to a new family, but instead will remain living with adoptive parents who have cared for her since birth.  The judge therefore acted well within her discretion in leaving posttermination contact between the mother and Brenna to the discretion of Brenna's adoptive parents.  See Adoption of Ilona, 459 Mass. at 66.

Decrees affirmed.

By the Court (Wolohojian, Milkey & D'Angelo, JJ.[2]),

_Anne M. Thomas_

Assistant Clerk

Entered:  January 11, 2024.

---

[2] The panelists are listed in order of seniority.