# United States Court of Appeals
## For the First Circuit

No. 12-2044

ANGIODYNAMICS, INC.,

Plaintiff, Appellee,

v.

BIOLITEC AG; WOLFGANG NEUBERGER; BIOLITEC, INC.;
BIOMED TECHNOLOGY HOLDINGS, LTD.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Thompson, Circuit Judges.

Edward Griffith, with whom Michael K. Callan and Doherty, Wallace, Pillsbury and Murphy, P.C. were on brief, for appellants.
William E. Reynolds, with whom Bond, Schoeneck, & King, PLLC was on brief, for appellee.

April 1, 2013

**Per Curiam**. This is an expedited appeal from the grant of a preliminary injunction barring defendants Biolitec AG ("BAG"), Biolitec, Inc. ("BI"), Biomed Technology Holdings, Ltd., and Wolfgang Neuberger from completing a merger between the German-based BAG and its Austrian subsidiary, and from the denial of defendants' motion for reconsideration. BI, which is a U.S.-based BAG subsidiary, sold medical equipment to plaintiff AngioDynamics, Inc. ("ADI"), and agreed to indemnify ADI for any patent infringement claims. Such claims were brought against ADI by the patent-holders and ADI settled the claims. In a separate lawsuit in New York, ADI obtained a $23 million judgment (including interest) against BI under the indemnification clause. Attempting to secure payment on that judgment, ADI sued defendants in this case in Massachusetts on claims including corporate veil-piercing and violation of the Massachusetts Uniform Fraudulent Transfers Act ("MUFTA"), Mass. Gen. Laws ch. 109A, § 5. ADI alleged that BAG looted BI of more than $18 million to render BI judgment-proof and to move BI's assets beyond reach.

On August 29, 2012, the district court granted ADI a temporary restraining order which, among other things, barred defendants from "carry[ing] out the proposed 'downstream merger' of Biolitec AG with its Austrian subsidiary" and from "transfer[ring] any ownership interest [they] hold[] in any other defendant." ADI alleged that the merger would place the company's assets out of its

-2-

reach, as American judgments are unenforceable in Austria. Following the merger, the Austrian company would hold all assets and liabilities previously held by BAG. On September 13, 2012, the court issued a preliminary injunction with the same terms as the temporary restraining order. The court denied defendants' motion for reconsideration on December 14, 2012,[1] see AngioDynamics, Inc. v. Biolitec AG, No. 09-cv-30181-MAP, 2012 WL 6569272 (D. Mass. Dec. 14, 2012), and defendants[2] have appealed.

Our review of the grant of injunctive relief is for abuse of discretion, and we review legal questions de novo. See KG Urban Enters., LLC v. Patrick, 693 F.3d 1, 14 (1st Cir. 2012).

I.

Defendants argue that (1) as a matter of law, preliminary injunctive relief is barred, and (2) the court erred in finding that ADI had demonstrated likelihood of success on the merits and irreparable harm. Defendants argue that, in the absence of an underlying court judgment, a preliminary injunction may not freeze

---

[1] The district court noted that defendants' dissembling during the preliminary injunction hearing "raised troubling questions about Defendants' good faith." AngioDynamics, Inc. v. Biolitec AG, No. 09-cv-30181-MAP, 2012 WL 6569272, at *2 (D. Mass. Dec. 14, 2012). These questions have become more disquieting in light of defendants' decision to complete BAG's merger on March 15, 2013, notwithstanding the court's preliminary injunction.

[2] On January 22, 2013, BI commenced bankruptcy proceedings in New Jersey, thus staying claims in this action against BI and BI's property. The stay has been lifted as to claims against the non-debtor defendants in this case. This appeal concerns only these defendants and not BI.

assets as to which a plaintiff does not have a lien or equitable interest, invoking Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999). Here there is an underlying judgment against BI, if not BAG. Moreover, the Court expressly noted that state statutes "conferring on a nonjudgment creditor the right to bring a fraudulent conveyance claim. . . . may have altered the common-law rule that a general contract creditor has no interest in his debtor's property." Id. at 324 n.7. In Iantosca v. Step Plan Services, Inc., 604 F.3d 24, 33 (1st Cir. 2010), we held that where a creditor has a judgment against a debtor and can make a colorable claim that the debtor's funds have been fraudulently conveyed to other entities, "the creditors do have a claimed lien interest to support [a] preliminary injunction" freezing assets transferred to the other entities. Massachusetts law creates an action for fraudulent conveyance, Mass. Gen. Laws ch. 109A, § 5, and ADI has asserted a claim under this statute. ADI has a final judgment against BI and presented substantial evidence that under Massachusetts law, BI fraudulently conveyed $18 million of its assets to BAG, an amount less than ADI's judgment against BI. ADI also presented evidence that BAG had intermingled these transferred assets with its other funds, and that in the absence of injunctive relief there was a strong likelihood ADI would not be able to collect on its judgment. The court's injunction was narrowly tailored to protect ADI's interest in BI's

transferred assets and explicitly allowed defendants to "tak[e] such actions as are reasonable and necessary to the ongoing and continued operation of the[ir] business."  Under these circumstances, Grupo Mexicano did not bar preliminary injunctive relief.

As for the court's findings regarding the four preliminary injunction factors, there was no abuse of discretion. See Swarovski AG v. Building No. 19, Inc., 704 F.3d 44, 48 (1st Cir. 2013) (per curiam).  The court supportably found that ADI had demonstrated a likelihood of success on its veil-piercing claim. See AngioDynamics, 2012 WL 6569272, at *9-10.

The court also supportably found that ADI had shown likelihood of success on its MUFTA claim.  Defendants argue that the district court erred in failing to explicitly address six of the eleven factors enumerated in Mass. Gen. Laws ch. 109A, § 5, that are relevant for determining whether a debtor acted with "actual intent" to defraud a creditor.  However, MUFTA never states that a court must explicitly consider each of the eleven factors or that a court can only set aside a transfer as fraudulent if a majority of the eleven factors are present.  See id. § 5(b) ("consideration may be given" to eleven factors "among other[s]" (emphasis added)); Soza v. Hill, 542 F.3d 1060, 1067 (5th Cir. 2008) ("[n]ot all, or even a majority, of the [eleven factors] must exist to find actual fraud" under Uniform Fraudulent Transfer Act).

ADI presented sufficient evidence to warrant a finding that five of these factors demonstrated a fraudulent transfer had taken place, and the district court did not err in concluding that based on the totality of the evidence, ADI had demonstrated a likelihood of succeeding on its MUFTA claims. Cf. Brandon v. Anesthesia & Pain Mgmt. Assocs., 419 F.3d 594, 599-600 (7th Cir. 2005) (Posner, J.) (eleven factors are "not additive," and defendant may be held liable under the Uniform Fraudulent Transfer Act if five of the eleven are present); McBirney v. Paine Furniture Co., No. 960031, 2003 WL 21094555, at *13 (Mass. Super. Ct. Mar. 31, 2003) (finding "actual intent" to defraud where five of eleven factors are present). ADI also presented direct evidence as to this claim, in the form of a declaration from a former BAG board member stating that Neuberger, BAG's majority shareholder and CEO, diverted assets from BI to BAG to frustrate collection of ADI's judgment against BI.[3] AngioDynamics, 2012 WL 6569272, at *5. Though defendants argue that some of this evidence could have been interpreted differently, the district court's view of the evidence was permissible and it did not clearly err.

---

[3] This case is easily distinguishable from Weiler v. Portfolioscope, Inc., 982 N.E.2d 555 (Mass. App. Ct. 2013), which defendants cite in support of their appeal. In Weiler, the court reversed a judgment finding a violation of MUFTA because the transfers in question were made "in legitimate payment of [the debtor's] indebtedness," not "to shield assets from its creditors," id. at 568, as the evidence demonstrated had occurred here.

-6-

Nor did the court err in finding that ADI had demonstrated irreparable harm.  Id. at *10.  Due to defendants' actions, ADI has been put through hoops and may not be able to collect on its judgment against BI.  We see no error in the court's conclusion that ADI may have some prospect of enforcing its judgment under German law, but none under Austrian law.

Mischaracterizing what the district court actually found, the defendants argue that the court was required to accept the view of its experts on German law.[4]  That view was that ADI would not be able to enforce its judgment against BI either in Germany or in Austria, but instead would have to relitigate the matter, so that BAG's proposed merger would make no difference.  ADI provided contrary argument and expert testimony.

The district court did not make a conclusive determination regarding German law at this stage of this case, nor did it need to do so.  Instead, the court reserved on the issue, noting that based on the conflicting testimony of experts presented by ADI and the defendants, the court could not foreclose that ADI would have a greater ability to enforce its judgment against BI in Germany if the merger was enjoined.  Id.  This was particularly

_____

[4] Defendants argue that ADI would face the same difficulties enforcing its judgment against BI in Germany as in Austria, and make several representations as to German law.  Defendants concede, however, that they have already misrepresented principles of European law once in this litigation, regarding the legal effect of a shareholder vote.

true given defendants' assertion that ADI's ability to enforce the judgment in Germany would turn on whether BI's stock certificates were located in the United States. Defendants presented no evidence as to the location of these certificates. Defendants conceded that if the merger was consummated and BAG's assets transferred to Austria, ADI would not be able to enforce its judgment against BI in Austria.

We review "mixed" questions of law and fact, such as this one, "along a degree-of-deference continuum, ranging from plenary review for law-dominated questions to clear-error review for fact-dominated questions." Inmates of Suffolk Cty. Jail v. Rouse, 129 F.3d 649, 661 (1st Cir. 1997). Given the preliminary nature of the district court's finding, and its basis in disputed questions of fact, we believe that clear error review is appropriate here. The district court did not commit clear error in concluding that -- given the conflicting testimony of experts as to German law and the lack of evidence as to the location of BI's stock certificates -- there was a possibility that ADI could enforce its judgment against BI in Germany, but no possibility of enforcement in Austria should the merger be completed and BAG's assets transferred to Austria. The court thus did not err in finding that ADI had demonstrated BAG's merger would cause it irreparable harm. Similarly, the court did not err in concluding that ADI had demonstrated that in the absence of a freeze on defendants' assets, ADI would suffer

irreparable harm, since the court could not otherwise assure that assets would remain available to satisfy ADI's judgment against BI.

The court also did not err in finding that the balance of harms and the public interest favored issuance of the injunction, AngioDynamics, 2012 WL 6569272, at *11, given that delaying the merger would cause only minimal harm to defendants.

## II.

We have expedited this appeal and find it to be without merit. The preliminary injunction issued by the district court is affirmed.