# United States Court of Appeals
## For the First Circuit

No. 14-1603

ANGIODYNAMICS, INC.,

Plaintiff, Appellee,

v.

BIOLITEC AG; BIOMED TECHNOLOGY HOLDINGS, LTD.; and
WOLFGANG NEUBERGER,

Defendants, Appellants.

BIOLITEC, INC.,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Lynch, Chief Judge,
Stahl and Kayatta, Circuit Judges.

Edward Griffith, with whom Michael K. Callan, Doherty,
Wallace, Pillsbury, and Murphy, P.C., and The Griffith Firm were on
brief, for appellants.
William E. Reynolds, with whom Bond, Schoeneck & King, PLLC
was on brief, for appellee.

March 11, 2015

**STAHL, Circuit Judge**.    This is a companion case to AngioDynamics v. Biolitec AG, Nos. 13-1626, 13-2179.    In this appeal, Defendants challenge the district court's exercise of personal jurisdiction over certain defendants, the denial of their motions to dismiss, and the entry of default judgment and a damages award against them as a sanction for discovery violations.  Finding all arguments meritless, we affirm.

## I.  Facts & Background

This court previously set out the basic factual contours of this case in AngioDynamics, Inc. v. Biolitec AG, 711 F.3d 248 (1st Cir. 2013) (per curiam).  Plaintiff AngioDynamics, Inc. ("ADI") obtained a $23 million judgment in New York against defendant Biolitec, Inc. ("BI"), a New Jersey corporation with its principal place of business in Massachusetts, based on an indemnification clause in the supply and distribution agreement governing BI's sale of medical equipment to ADI.  Plaintiff sought to secure payment on that judgment by bringing suit in the District of Massachusetts against BI's President and CEO, Wolfgang Neuberger, and its corporate parents, Biomed Technology Holdings ("Biomed") and Biolitec AG ("BAG") (collectively, "Defendants"),[1]

_____

[1] At the time this action began, Biolitec AG, a German corporation headquartered in Germany, owned ninety percent of Biolitec, Inc.'s stock.  Neuberger, a citizen of Austria with residences the world over, served as the President, CEO, and Chairman of the Board of Directors of both Biolitec, Inc. and Biolitec AG.  He was the sole owner of Biomed Technology Holdings, a Malaysian corporation that owned approximately seventy-five

alleging that Defendants had looted BI of over $18 million in assets in order to render it judgment-proof. Specifically, the complaint alleged tortious interference with contractual relations, fraudulent transfers of assets in violation of the Massachusetts Uniform Fraudulent Transfer Act ("MUFTA"), Mass. Gen. Laws ch. 109A, § 5, and deceptive commercial acts or practices in violation of Mass. Gen. Laws ch. 93A, § 11 ("chapter 93A"). The complaint also demanded a declaratory judgment that Neuberger, Biomed, and BAG were jointly and severally liable for ADI's judgment against BI in the underlying contract action under the doctrine of piercing the corporate veil.

We will recount only the portions of the procedural background of this case pertinent to the issues raised in this appeal. ADI filed its amended complaint on March 26, 2010. BAG filed a motion to dismiss, averring that the district court lacked personal jurisdiction over the German company and that three counts of ADI's complaint failed to state a claim. The district court denied the motion in a lengthy memorandum and order. Angiodynamics, Inc. v. Biolitec AG, No. 09-cv-30181-MAP, 2011 WL 3157312, at *9 (D. Mass. July 25, 2011). Four days later, Biomed and Neuberger filed their own motion to dismiss, raising substantially similar arguments as BAG's motion (personal

percent of Biolitec AG's stock. Biolitec, Inc. has filed for Chapter 11 bankruptcy and is not a party to this appeal.

jurisdiction as to Biomed, and failure to state a claim on three counts as to both Biomed and Neuberger). The district court denied this second motion on the same grounds as the first.

As the parties began discovery, Defendants resisted ADI's efforts to depose Neuberger and other key witnesses. ADI served Neuberger with a notice of deposition in July 2012, but he indicated he would not attend. After ADI filed a motion to compel his attendance at the deposition, Neuberger agreed to come and ADI withdrew its motion. Neuberger attended the first day of the deposition in Springfield, Massachusetts, in January 2013, but the parties were forced to postpone the remainder of the deposition until Defendants produced various court-ordered documents for ADI's review. In July 2013, Defendants filed a motion for a protective order to stay Neuberger's deposition. The magistrate judge assigned to this case denied the motion as, inter alia, untimely and unfairly prejudicial to ADI. Defendants refused to produce Neuberger, and filed a second motion for a protective order seeking to continue the deposition by videolink; the magistrate judge denied this motion as well. Similar issues arose in relation to the depositions of three key BI corporate officers: the parties agreed to suspend their depositions until Defendants produced various court-ordered documents. Subsequently, Defendants refused to produce any of the documents or the three witnesses. ADI filed two motions for sanctions based on the Defendants' failure to turn

over the key documents and refusal to produce either Neuberger or the three managing agents.

During the discovery period, ADI learned that Defendants planned to merge BAG with its Austrian subsidiary. ADI moved for a temporary restraining order and then for a preliminary injunction to prevent the merger, arguing that ADI would be unable to enforce any judgment against BAG in the Austrian courts. The district court enjoined the merger and this court affirmed the issuance of the preliminary injunction. AngioDynamics, 711 F.3d at 252. While that appeal was pending, Defendants effected the merger anyway. ADI moved for contempt proceedings, and the district court ordered Neuberger to appear in person to show cause why he should not be held in contempt. Neuberger did not appear. On April 11, 2013, the district court held Defendants in contempt for violating the preliminary injunction and ordered coercive penalties against Defendants until they undid the merger. AngioDynamics, Inc. v. Biolitec AG, 946 F. Supp. 2d 205, 215–16 (D. Mass. 2013). This contempt order is the subject of the companion case to this opinion, AngioDynamics v. Biolitec AG, Nos. 13-1626, 13-2179.

Approximately a month later, on May 24, 2013, ADI moved for default judgment based on Defendants' failure to comply with the contempt order. The district court denied the motion on August 30, 2013, but ordered Defendants to file a status report detailing their plan for complying with the contempt decision and for

-5-

producing Neuberger to the district court to "testify as to his actions in response to the injunction." AngioDynamics, Inc. v. Biolitec AG, 966 F. Supp. 2d 71, 74 (D. Mass. 2013). Defendants' status report, dated October 1, 2013, stated definitively that they had no intention of complying with the contempt order. See AngioDynamics, Inc. v. Biolitec AG, 991 F. Supp. 2d 283, 298 (D. Mass. 2014). On October 11, 2013, ADI filed a renewed motion for default judgment based on Defendants' status report, which the district court heard along with ADI's two motions for sanctions for violations of various discovery orders. On January 14, 2014, the district court allowed the motions for sanctions and entered default judgment for ADI.[2] Id. at 299. On March 18, 2014, the court awarded approximately $75 million to ADI, which included chapter 93A damages. AngioDynamics, Inc. v. Biolitec AG, 991 F. Supp. 2d 299, 307 (D. Mass. 2014). This appeal followed.

## II. Analysis

### A. Personal Jurisdiction

Defendants begin by positing that the default judgment is void as to BAG, BI's parent corporation, and Biomed, BAG's primary

---

[2] The district court entered default judgment in relation to the motions for sanctions for discovery order violations; it denied ADI's separate motion for default judgment as moot in light of the fact that it had entered default judgment against Defendants as the penalty for discovery order violations. AngioDynamics, Inc. v. Biolitec AG, 991 F. Supp. 2d 283, 299 (D. Mass. 2014).

shareholder, for lack of personal jurisdiction.[3] Defendants aver that even if the court could impute BI's contacts with the forum to BAG and Biomed for personal jurisdiction purposes, the district court was required to conduct an independent analysis of each of the Defendants' contacts with Massachusetts. Defendants' argument relies on two recent Supreme Court cases, <u>Goodyear Dunlop Tires Operations, S.A.</u> v. <u>Brown</u>, 131 S. Ct. 2846 (2011), and <u>Daimler AG</u> v. <u>Bauman</u>, 134 S. Ct. 746 (2014). We need not reach this particular argument because jurisdiction is so clearly established in this case.

It is undisputed that the District of Massachusetts could properly exercise personal jurisdiction over BI, a corporation with its principal place of business in Massachusetts, making BI "at home" in this forum. <u>See</u> <u>Daimler</u>, 134 S. Ct. at 760. ADI must make a prima facie showing of jurisdiction sufficient to overcome Defendants' Rule 12(b)(2) motion to dismiss. <u>See</u> <u>Phillips</u> v. <u>Prairie Eye Ctr.</u>, 530 F.3d 22, 26 (1st Cir. 2008) (where the district court does not hold an evidentiary hearing on a jurisdictional question, this court reviews the proffered evidence to determine whether the plaintiff has established a prima facie showing of jurisdiction by a preponderance of the evidence). ADI's

---

[3] Neuberger, BI's CEO, President, and Chairman of the Board, waived any challenge to the district court's personal jurisdiction over him by failing to raise the issue in his answer or move for dismissal under Rule 12(b)(2).

complaint alleged that Defendants looted BI by fraudulently transferring its assets out of Massachusetts, and thereby rendering BI unable either to perform its contractual duties owed to ADI or to satisfy the judgment due to ADI. This conduct gives rise to each of the counts in the complaint and was materially connected to the forum state because it occurred here. E.g., Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005) (citing United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088-89 (1st Cir. 1992)). Thus, as the district court discussed at length in its memorandum and order, ADI's allegations suffice to establish jurisdiction over BAG and Biomed, and the cases cited by Defendants do not require a different result. AngioDynamics, 2011 WL 3157312, at *3-7 & *7 n.8.

## B. Motion to Dismiss for Failure to State a Claim

Defendants argue that the default judgment is void as to all Defendants because ADI's complaint fails to state valid causes of action for tortious interference with contractual relations, veil piercing, and MUFTA violations.[4] The district court rejected Defendants' arguments when it denied their Rule 12(b)(6) motion to dismiss, AngioDynamics, 2011 WL 3157312, at *7-9, denied their motion for partial judgment on the pleadings as to the MUFTA

---

[4] Defendants' briefing on appeal does not dispute that ADI stated a valid claim for chapter 93A relief, although they contested this cause of action below.

-8-

claims, and again when it awarded damages to ADI after entry of default judgment, AngioDynamics, 991 F. Supp. 2d at 304–06.

This court previously found that ADI demonstrated a likelihood of success on its veil piercing and MUFTA claims. AngioDynamics, 711 F.3d at 251. It follows that ADI's complaint, which alleged that Defendants' exercised pervasive control over BI by fraudulently transferring assets, thus looting the company and rendering it judgment-proof, was sufficient to overcome Defendants' Rule 12(b)(6) and 12(c) motions. We will not revisit legal rulings "explicitly or implicitly decided by an earlier appellate decision in the same case." Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 53 (1st Cir. 2009) (internal quotation marks omitted) (holding that where earlier appellate panel held that complaint adequately stated a cause of action, law of the case doctrine precludes challenge to sufficiency of the pleadings after entry of default judgment). As for the tortious interference cause of action, the complaint alleges that Defendants wrongfully induced BI to violate its supply and distribution contract with ADI, and then rapaciously drained BI of its assets in order to avoid satisfying the judgment due to ADI, causing ADI significant financial loss. As the district court repeatedly found, these allegations sufficiently plead tortious interference with contractual relations under Massachusetts law. E.g., AngioDynamics, 2011 WL 3157312, at *7–8; see also Weiler v.

-9-

<u>PortfolioScope, Inc.</u>, 469 Mass. 75, 84 (2014) (setting out elements of cause of action).

## C. Entry of Default Judgment

After Defendants repeatedly refused to produce various individuals for depositions, including Neuberger, ADI moved for sanctions pursuant to Federal Rule of Civil Procedure 37. The district court granted the motions and entered default judgment against all Defendants. <u>AngioDynamics</u>, 991 F. Supp. 2d at 297.

Under Rule 37, the district court maintains a variety of tools at its disposal to sanction a party who violates discovery orders, from staying the proceedings to entering default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A). District courts may impose such sanctions with an eye both to penalize the particular noncompliance and to deter others from engaging in the same tactics. <u>Companion Health Servs., Inc.</u> v. <u>Kurtz</u>, 675 F.3d 75, 84 (1st Cir. 2012) (quoting <u>Nat'l Hockey League</u> v. <u>Metro. Hockey Club, Inc.</u>, 427 U.S. 639, 643 (1976) (per curiam)). The choice of sanction lies in the purview of the district court, and we review for abuse of discretion. As we have observed in the past, "this standard of review is not appellant-friendly -- and a disgruntled litigant bears a heavy burden in attempting to show that an abuse occurred." <u>Tower Ventures, Inc.</u> v. <u>City of Westfield</u>, 296 F.3d 43, 46 (1st Cir. 2002).

We have set out a non-exhaustive list of factors for consideration when reviewing a Rule 37 motion for sanctions, some substantive and others procedural. Vallejo v. Santini-Padilla, 607 F.3d 1, 8 (1st Cir. 2010). Specifically, we have called on district courts to weigh the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions. Id. On the procedural side, we consider whether the district court gave the offending party notice of the possibility of sanctions and the opportunity to explain its misconduct and argue against the imposition of such a penalty. Id.

The district court dutifully reviewed and discussed each of these factors in a detailed forty-five page memorandum and order. AngioDynamics, 991 F. Supp. 2d at 290–97. As the district court ably and convincingly described, Defendants' conduct here was severe, repeated, and deliberate, with no legitimate or mitigating explanation for noncompliance. Id. at 291–93, 296–97. Their discovery violations frustrated ADI's ability to prosecute this lawsuit and the district court's ability to manage its docket. Id. at 293–95, 297. Defendants do not contend that they were subjected to any procedural inadequacies in the imposition of default judgment. Indeed, the district court afforded Defendants

-11-

numerous opportunities to explain themselves, both on paper and in person, and had warned them that default judgment was a possibility if they continued to flout discovery orders. See id. at 290-91; AngioDynamics, Inc. v. Biolitec AG, 966 F. Supp. 2d 71, 74 (D. Mass. 2013) (denying ADI's first motion for default judgment, but stating, "Defendants should be aware, however, that their continued defiance of court orders will have increasingly severe consequences," including "reconsideration of entry of default judgment"). Despite the admonitions, Defendants continued to engage in a "deliberate pattern of stonewalling with the aim of frustrating effective discovery and the progress of the case." Companion Health Servs., 675 F.3d at 85. Facing repeated recalcitrance almost five years after ADI filed the instant action, the district court acted well within its discretion when it concluded that no lesser sanction could address the twin goals of penalty and deterrence.

Although entry of default judgment is a "drastic sanction," it nonetheless "provides a useful remedy" where, as here, "a litigant is confronted by an obstructionist adversary." Crispin-Taveras v. Municipality of Carolina, 647 F.3d 1, 7 (1st Cir. 2011) (internal quotation marks omitted). Given the severity of Defendants' discovery violations, the district court acted well within its discretion in entering default judgment, a sanction that

can play a "constructive role in maintaining the orderly and efficient administration of justice." Id.

**D. Award of Damages Without an Evidentiary Hearing**

After entry of default judgment, the district court heard argument from the parties regarding the issue of damages and permitted the parties to submit both pre- and post-argument briefs. On March 18, 2014, the court awarded approximately $75 million in damages to ADI. AngioDynamics, 991 F. Supp. 2d at 307. Defendants aver that the award of damages without an evidentiary hearing amounts to an abuse of the district court's discretion. We disagree. See HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 F.2d 908, 919 (1st Cir. 1988) ("We review a determination that a hearing was not compulsory under Rule 55(b) only for abuse of discretion.").

Federal Rule of Civil Procedure 55, which governs the entry of default judgment against a party, states explicitly that the district court "may conduct hearings . . . when, to enter or effectuate the judgment, it needs to: . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B) (emphasis added). The rule's language makes an evidentiary hearing an available tool, not a prerequisite, to the determination of a damage award. We have observed in the past that "no evidentiary inquiry is necessary if the claim is for a 'sum certain,'" that is, where "there is no doubt as to the amount to which a plaintiff is entitled as a result

of the defendant's default." KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003). While a stated dollar amount alleged in a complaint does not, by itself, present a sum certain, see id. at 20 n.9, here, ADI rooted its claim for damages in past adjudication: $23,156,287, the amount entered in its favor in the New York action. The district court took the New York judgment amount, trebled it pursuant to Mass. Gen. Laws ch. 93A, § 11, and calculated statutory prejudgment interest pursuant to Mass. Gen. Laws ch. 231, § 6B. AngioDynamics, 991 F. Supp. 2d at 306-07. The court did not need an evidentiary hearing to input these calculations, especially given its familiarity with the case. Cf. HMG Prop. Investors, 847 F.2d at 919 ("It is settled that, if arriving at the judgment amount involves nothing more than arithmetic -- the making of computations which may be figured from the record -- a default judgment can be entered without a hearing of any kind."). The district court could, in its discretion, award treble damages under chapter 93A where Defendants' liability was established by default and the district court was well-acquainted with the egregiousness of Defendants' conduct. Cf. KPS & Assocs., 318 F.3d at 21-25 (affirming doubling of compensatory damages under chapter 93A and taking factual allegations of the complaint as true by virtue of default judgment). The only conceivable sum uncertain in the damage award was the amount of attorneys' fees and costs owed ADI under chapter 93A, but Defendants failed to contest ADI's

-14-

presented calculation either to the district court or here on appeal. The district court committed no abuse of discretion and complied with Rule 55's elective language when it entered a damage award based on preexisting figures without an evidentiary hearing.

### III. Conclusion

For the foregoing reasons, we <u>affirm</u> the entry of default judgment against Defendants and the district court's award of damages. We award costs of this appeal to Plaintiff.