# United States Court of Appeals
## For the First Circuit

No. 13-1626
No. 13-2179

ANGIODYNAMICS, INC.,

Plaintiff, Appellee,

v.

BIOLITEC AG; BIOMED TECHNOLOGY HOLDINGS, LTD.; and
WOLFGANG NEUBERGER,

Defendants, Appellants.

BIOLITEC, INC.,

Defendant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Lynch, Chief Judge,
Stahl and Kayatta, Circuit Judges.

Edward Griffith, with whom Michael K. Callan, Doherty, Wallace, Pillsbury, and Murphy, P.C., and The Griffith Firm were on brief, for appellants.
William E. Reynolds, with whom Bond, Schoeneck & King, PLLC was on brief, for appellee.

March 11, 2015

**STAHL, Circuit Judge.**   This is a companion case to AngioDynamics v. Biolitec AG, No. 14-1603.   In this appeal, Defendants argue that the district court exceeded the bounds of its authority when it issued civil contempt sanctions after Defendants violated the court's preliminary injunction order.  Defendants also aver that the district court should have vacated the underlying preliminary injunction.  We affirm.

## I.  Facts & Background

This court previously set out the basic factual contours of this case in AngioDynamics, Inc. v. Biolitec AG, 711 F.3d 248 (1st Cir. 2013) (per curiam).  Plaintiff AngioDynamics, Inc. ("ADI") obtained a $23 million judgment in New York against defendant Biolitec, Inc. ("BI"), a New Jersey corporation with its principal place of business in Massachusetts, based on an indemnification clause in the supply and distribution agreement governing BI's sale of medical equipment to ADI.  Plaintiff sought to secure payment on that judgment by bringing suit in the District of Massachusetts against BI's President and CEO, Wolfgang Neuberger, and its corporate parents, Biomed Technology Holdings ("Biomed") and Biolitec AG ("BAG") (collectively, "Defendants"),[1]

---

[1] At the time this action began, Biolitec AG, a German corporation headquartered in Germany, owned ninety percent of Biolitec, Inc.'s stock.  Neuberger, a citizen of Austria with residences the world over, served as the President, CEO, and Chairman of the Board of Directors of both Biolitec, Inc. and Biolitec AG.  He was the sole owner of Biomed Technology Holdings, a Malaysian corporation that owned approximately seventy-five

alleging that Defendants had looted BI of over $18 million in assets in order to render it judgment-proof.

We will recount only the portions of the procedural background of this case pertinent to the issues raised in this appeal. In August 2012, ADI learned that BAG planned to merge with an Austrian subsidiary. Since American judgments are unenforceable in Austria, the merger would place BAG's assets out of ADI's reach. The district court issued a temporary restraining order -- later converted into a preliminary injunction -- barring the merger. Defendants unsuccessfully filed a motion to vacate the injunction in the district court, then appealed. In March 2013, while that appeal was still pending, Defendants effected the merger anyway, moving BAG's corporate domicile from Germany to Austria. This court affirmed the preliminary injunction on April 1, 2013, the same day as that panel heard oral argument. AngioDynamics, 711 F.3d at 252.

ADI filed an emergency motion for contempt shortly after learning that BAG had merged with its Austrian affiliate. On April 11, 2013, the district court issued a twenty-page contempt decision authorizing coercive fines against Defendants and a warrant for Neuberger's arrest. AngioDynamics, Inc. v. Biolitec AG, 946 F. Supp. 2d 205, 215 (D. Mass. 2013). The monthly fines escalate in

percent of Biolitec AG's stock. Biolitec, Inc. has filed for Chapter 11 bankruptcy and is not a party to this appeal.

amount each month that the merger remains in place.  Id. at 216.
The district court's contempt order made clear that it would lift
the fines and arrest warrant once Defendants undo the merger and
restore the status quo ante.  Id. at 215.  Four months later,
Defendants filed another round of motions to revoke the contempt
order and vacate the underlying injunction; the district court
denied the motions yet again.  AngioDynamics, Inc. v. Biolitec AG,
974 F. Supp. 2d 1, 5-11 (D. Mass. 2013).  These appeals followed.

## II. Analysis

### A. Denial of Rule 60(b) Motion to Vacate Preliminary Injunction

We begin with Defendants' challenge to the district
court's denial of their motion to vacate the preliminary injunction
pursuant to Federal Rules of Civil Procedure 60(b)(4) and
60(b)(6).[2]  Defendants presented two sets of declarations in

---

[2] ADI urges us to dismiss this appeal based on the fugitive
disentitlement doctrine, which permits an appellate court to
decline to hear appeals from a fugitive from justice.  See Degen v.
United States, 517 U.S. 820, 824 (1996); see also Ortega-Rodriguez
v. United States, 507 U.S. 234, 239, 242 (1993) (observing that the
well-settled doctrine "serves an important deterrent function and
advances an interest in efficient, dignified appellate practice").
In the context of civil proceedings, dismissal requires a
determination that, first, the fugitive's status bears some
connection to the civil action, and second, dismissal addresses
concerns underlying the doctrine, including "prejudice to the
opponent, delay, frustration, and unenforceability [of any
potential judgments against the fugitive]."  Walsh v. Walsh, 221
F.3d 204, 215 (1st Cir. 2000).
We decline to exercise our discretion to apply the doctrine to
the two corporate defendants here, given that no criminal sanctions
are pending against them.  Cf. United Elec., Radio & Mach. Workers
v. 163 Pleasant St. Corp., 960 F.2d 1080, 1097-98 (1st Cir. 1992)
(rejecting plaintiffs' motion to dismiss corporate defendant's

support of their motion to refute the district court's finding at the preliminary injunction stage that relocating BAG to Austria would make it more difficult or impossible for ADI to enforce its judgment against the company.

Rule 60(b)(4) permits a party to move for relief from an order on grounds that it is void. We review the denial of a Rule 60(b)(4) motion de novo, as the validity of a judgment is not a discretionary question. Fafel v. Dipaola, 399 F.3d 403, 409-10 (1st Cir. 2005). Rule 60(b)(6), by contrast, is a catch-all provision warranting excusal from an order or judgment for "any other reason that justifies relief"; the denial of such a request

_____

appeal based on civil contempt order lodged against the corporation; "in general, a court should be extremely reluctant to invoke the equitable doctrine of disentitlement when an appellant has not committed any criminal act").

As for Neuberger, the gravity of his conduct and the nexus between the district court's arrest warrant and ADI's complaint provides strong support for application of the doctrine as to his appeal. See Goya Foods, Inc. v. Unanue-Casal, 275 F.3d 124, 129-30 (1st Cir. 2001) (dismissing appeal under the fugitive disentitlement doctrine where defendants, in an attempt to avoid satisfying the plaintiff's underlying judgment against them, violated injunction barring them from transferring certain assets; defendants' flight from the arrest warrant "grows directly out of [plaintiff's] effort to enforce its judgment . . . and the appeal is from actions and orders of the district court designed to enforce that very judgment"). However, application of this doctrine is "discretionary rather than automatic and to be applied with caution." Id. at 129. Given that Neuberger's appeal rests on identical grounds as his corporate co-defendants, and given the relative ease with which we can dispose of Defendants' appeal on the merits, we decline to dismiss Neuberger's appeal on these grounds.

is reviewed for abuse of discretion.  Ungar v. Palestine Liberation Org., 599 F.3d 79, 83 (1st Cir. 2010).

Under either standard, Defendants cannot use their Rule 60(b) motion to collaterally attack the preliminary injunction, which this court already has considered and affirmed. AngioDynamics, 711 F.3d at 252.  A Rule 60(b) motion "must satisfy a special set of criteria; it is not enough merely to cast doubt on the soundness of the underlying judgment."  Nansamba v. N. Shore Med. Ctr., 727 F.3d 33, 37 (1st Cir. 2013).  The moving party must demonstrate in a timely motion that "'exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted.'"  Id. (quoting Fisher v. Kadant, Inc., 589 F.3d 505, 512 (1st Cir. 2009)).

Defendants' motion does little to even cast doubt on the underlying injunction.  First, they offer two declarations from one of their experts on German law -- an expert who previously offered multiple declarations in opposition to ADI's original preliminary injunction motion -- to refute the district court's finding that ADI cannot enforce its judgment in Austria, but might be able to enforce it in Germany.  Essentially, Defendants assert that the downstream merger with the Austrian subsidiary will have no practical impact on ADI's ability to collect, and thus ADI will

-6-

suffer no harm from Defendants' violation of the court's preliminary injunction.  The expert opined that ADI would face the same burden enforcing its judgment in Germany as in Austria, virtually the same opinion Defendants' experts had offered and the district court and this court have already rejected.

Second, Defendants offer Neuberger's own declaration in support of their assertion that a German court will not recognize the district court's jurisdiction over BAG -- and thus will not enforce ADI's judgment -- because ADI is unable to present affirmative evidence that BAG's stock certificates were located in the United States at the time ADI commenced this action.  In affirming the preliminary injunction, this court noted that Defendants had failed to offer information concerning the location of BAG's stock certificates, despite their "assertion that ADI's ability to enforce the judgment in Germany would turn on whether [the] stock certificates were located in the United States." AngioDynamics, 711 F.3d at 252.  Defendants attempt to remedy this deficiency with Neuberger's statement that he "personally recall[s]" seeing BAG's stock certificates in Germany both in 2000 and on some indeterminate date after, although he "do[es] not recall the precise year or the circumstances."  While Neuberger's declaration provides some new evidence that the stock certificates were located outside the United States when ADI filed suit, which could preclude ADI from enforcing its judgment in Germany,

-7-

Neuberger's vague memories hardly provide conclusive proof that the stock certificates were not in this country when this suit began. Further, Neuberger's statement is undermined by evidence in the record that BI's counsel kept the stock certificates showing BAG's ownership of BI in the company's East Longmeadow, Massachusetts, office from before 2009 and at least until the date of his deposition in 2012.

For all their repeated assertions, Defendants' submissions in support of their Rule 60(b) motion fail to demonstrate that the preliminary injunction, already affirmed by this court, warrants extraordinary relief under Rule 60(b)(6) or is void under Rule 60(b)(4).

## B. Civil Contempt Sanctions

Next, we turn to the district court's imposition of civil contempt sanctions and its denial of Defendants' Rule 60(b) motion for relief from the same.

A district court may issue a civil contempt order if the moving party establishes by clear and convincing evidence that the alleged contemnor violated the order despite clear and umambiguous notice of the order and the ability to comply with it. <u>Hawkins</u> v. <u>Dep't of Health & Human Servs. for N.H., Comm'r</u>, 665 F.3d 25, 31 (1st Cir. 2012). Defendants do not dispute the district court's contempt finding, but argue that the scope and gravity of the penalties rise to the level of a criminal sanction, thus exceeding

the bounds of the district court's authority.  Mindful that the district court enjoys wide latitude in its choice of sanctions, our review is limited to abuse of discretion.  Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 77-78 (1st Cir. 2002).  Under that deferential standard, we conclude that no abuse of discretion occurred here.

A district court's authority to issue a contempt order derives from its inherent power to "sanction . . . litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of [case] proceedings."  United States v. Kouri-Perez, 187 F.3d 1, 7 (1st Cir. 1999).  Since the civil contemnor may absolve herself of the sanction by complying with the contempt order, civil contempt sanctions may be imposed with merely notice and an opportunity to be heard.  United States v. Winter, 70 F.3d 655, 661 (1st Cir. 1995).  Conversely, criminal contempt is a "crime in the ordinary sense," requiring full procedural protections before imposition.  Int'l Union, United Mine Workers of Am. (UMWA) v. Bagwell, 512 U.S. 821, 826-27 (1994) (internal quotation marks omitted).

"Civil contempt is a forward-looking penalty meant to coerce compliance rather than to punish past noncompliance."  Hawkins, 665 F.3d at 32.  There is no dichotomous split between coercion and punishment, however, and a civil contempt sanction may evidence a punitive flavor.  After all, "[m]ost contempt sanctions,

-9-

like most criminal punishments, to some extent punish a prior offense as well as coerce an offender's future obedience." Int'l Union, UMWA, 512 U.S. at 828. In addition to nudging a party to comply with a past court order, a district court may also utilize sanctions to compensate the complainant for harms suffered as a result of the contempt and to reinforce the court's own authority. See Goya Foods, 290 F.3d at 78. This court examines the character and purpose of the district court's sanctions to determine whether they are civil or criminal in nature. Int'l Union, UMWA, 512 U.S. at 827–28.

Defendants' argument that the sanctions are so punitive as to rise to the level of a criminal contempt order rests on territory familiar to this litigation: first, ADI suffered no harm from the prohibited merger; second, the district court should have allowed Defendants' expert to testify that the underlying judgment would be as difficult to enforce in Germany as in Austria; and third, it is impossible for Defendants to undo the merger and restore the status quo ante.[3] This court has already rejected the argument that no harm will come to ADI as a result of the merger,

---

[3] Defendants raised these arguments in support of their motion for relief from the contempt order pursuant to Federal Rules of Civil Procedure 60(b)(4) and 60(b)(6), and in support of their Rule 59(e) motion, which the district separately rejected as untimely. See AngioDynamics, Inc. v. Biolitec AG, 974 F. Supp. 2d 1, 5–11 (D. Mass. 2013). We reject Defendants' challenge to the district court's denial of their Rule 60(b) motions for substantially the same reasons that their challenge to the underlying contempt order fails.

AngioDynamics, 711 F.3d at 251-52, and Defendants have presented this argument to the district court multiple times. The district court was well within its discretion in declining to hear additional testimony on German law from another of Defendants' experts. We easily reject Defendants' third argument as well: as Defendants conceded to the district court and here at oral argument, it is not "impossible" for Defendants to undo the merger, but merely costly and inconvenient. Thus, Defendants fail to meet their burden to show that they are unable to comply with the terms of the district court's order. See United States v. Puerto Rico, 642 F.3d 103, 108 n.8 (1st Cir. 2011) (stating that an alleged contemnor cannot meet his burden to prove impossibility if he "offers no evidence as to his inability to comply" or offers only "his own denials which the court finds incredible in context" (quoting Maggio v. Zeitz, 333 U.S. 56, 75-76 (1983))).

Defendants also assemble a cherry-picked set of the district court's expressions of frustration in an attempt to demonstrate that the court had the primarily punitive purpose of vindicating its authority. A careful review of the contempt hearing transcripts and the sanctions order, however, reveals that the district court consistently justified the fines and civil arrest warrant as tools to coerce Defendants' compliance with the preliminary injunction. Int'l Union, UMWA, 512 U.S. at 827-28. As the district court stressed, "[t]he goal of this court is not to

-11-

punish Defendants gratuitously; the goal is to obtain compliance with the court's order." AngioDynamics, 974 F. Supp. 2d at 9.

That leaves us to consider whether the district court abused its discretion in delineating the fines set out in the contempt order,[4] totaling over $160 million as of oral argument -- an amount far greater than the $23 million judgment that spurred this action in the first place. Defendants' characterize the fines as "draconian," "wildly disproportionate," and certain to lead to "financial ruin." For the most part, we disagree. The fine accumulates over time, incentivizing Defendants to cure the contempt promptly. While the monthly dollar amounts are high, the district court determined in its discretion that it needed to set a large enough fine to prod Defendants, heretofore recalcitrant and even obstinate in the face of court orders, to take action to undo the merger. The district court's order states that the court will "lift[]" the fines as soon as Defendants come into compliance with the preliminary injunction. AngioDynamics, 946 F. Supp. 2d at 215 ("Defendants have the keys to their prison in their own pockets. The coercive fines and arrest warrant . . . will be lifted as soon as the court is satisfied that the status quo ante has been

---

[4] The fine schedule gave Defendants thirty days from the date of the order to begin undoing the downstream merger. The contempt order delineates that at the thirty day mark, on May 10, 2013, the court would assess a $1 million fine, then $2 million on June 1, $4 million on July 1, $8 million on August 1, and thereafter $8 million on the first of each month. AngioDynamics, Inc. v. Biolitec AG, 946 F. Supp. 2d 205, 215 (D. Mass. 2013).

-12-

restored.") (internal quotation marks and citations omitted).

Defendants thus retain the power to end the accruing of the fines and avoid the potential fiscal catastrophe invoked in their brief. Cf. In re Grand Jury Proceedings, 744 F.3d 211, 214 (1st Cir. 2014) ("In keeping with [the] coercive function [of civil contempt orders], courts have long recognized that civil contempt sanctions are necessarily limited to the period in which the contemnor can unlock the figurative prison door by purging himself of contempt."). The district court acted well within its discretion in setting out a "prospective, conditional fine" to achieve compliance. United States v. Prof'l Air Traffic Controllers Org. (PATCO), Patco Local 202, 678 F.2d 2, 4 (1st Cir. 1982).

That said, at this point, the amount of the cumulative fine far exceeds the amount of the original judgment ADI is attempting to collect. This is in large part Defendants' own doing, since they have failed to take steps to undo the merger, and the fines continue to accumulate each month. We remand only to direct the district court to amend the sanction order so that the fines cease to accrue at some total amount. If Defendants purge their contempt by restoring the status quo ante, we expect that the district court will make good on its promise to reassess the fine amount if Defendants come into compliance with the preliminary injunction. AngioDynamics, 974 F. Supp. 2d at 8.

## C. Alternative Method of Service on Biomed and Neuberger

As alternate grounds for reversal, Defendants Biomed and Neuberger argue that the preliminary injunction and contempt order are void as to them because they were not served in accordance with international law and the Federal Rules of Civil Procedure. We review the district court's decisions regarding service of process for abuse of discretion. Crispin-Taveras v. Municipality of Carolina, 647 F.3d 1, 6 (1st Cir. 2011).

Federal Rule of Civil Procedure 4(f) provides that an individual or corporation[5] may be served in a foreign country by (1) "any internationally agreed means of service that is reasonably calculated to give notice"; (2) a method prescribed by the foreign country's laws or directives, or, if permitted by that country, by personal delivery or certified mail; or (3) "by other means not prohibited by international agreement, as the court orders." The advisory committee note to this subdivision states that, in the interest of "reasonable notice," "an earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law." Fed. R. Civ. P. 4(f) advisory committee's note (1993 Amendments).

---

[5] Rule 4(f) applies to corporations through Rule 4(h)(2), which states that a domestic or foreign corporation may be served outside a United States judicial district "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery."

The record demonstrates that ADI endeavored to serve both Biomed and Neuberger in multiple countries on multiple occasions and by various methods. Despite ADI's repeated requests, Neuberger would not authorize his counsel to accept service on his behalf, despite his admitted awareness of the suit. ADI tried to serve Biomed and Neuberger four times in Germany in accordance with the Hague Convention, including an attempt at a BAG shareholder meeting which Neuberger unexpectedly failed to attend. After Defendants argued that Neuberger and Biomed should have been served by registered mail in Dubai and Malaysia, Plaintiff delivered service documents by registered mail, with return receipt requested, to Neuberger's address in Dubai and Biomed's headquarters in Malaysia. Nevertheless, Neuberger and Biomed refused to concede at the alternative service motion hearing that these mailings effectuated service of process on them. In the face of these difficulties and the "possibly inadvertent but nevertheless misleading statements made by [defense] counsel," the district court authorized alternative service on Biomed, a Malaysian corporation located in Malaysia, and Neuberger, a citizen of Austria with residences on four continents, pursuant to Rule 4(f)(3). AngioDynamics, Inc. v. Biolitec AG, No. 09-cv-30181-MAP, 2011 WL 1878145, at *1 (D. Mass. May 17, 2011).

By its plain terms, Rule 4(f)(3) does not require exhaustion of all possible methods of service before a court may

-15-

authorize service by "other means," such as service through counsel and by email.  Given that the district court was presented with "an elusive international defendant, striving to evade service of process," the court acted within its discretion when it authorized alternative service under Rule 4(f)(3).  <u>Rio Props., Inc.</u> v. <u>Rio Int'l Interlink</u>, 284 F.3d 1007, 1016 (9th Cir. 2002) (affirming court-ordered alternative service methods on a foreign business, including service via email).  Thus, the judgment is not rendered void for failure to serve Biomed and Neuberger.

### III.  Conclusion

For the foregoing reasons, we <u>affirm</u> both the district court's denial of Defendants' motion to vacate the preliminary injunction and the district court's civil contempt finding.  We <u>remand</u> for the sole purpose of directing the district court to take action with respect to the total accruing fine amount, in accordance with this opinion.  We award costs of this appeal to Plaintiff.