**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## FOR THE FIRST CIRCUIT

**BAP NO. MB 21-005**

**Bankruptcy Case No. 19-10594-FJB**
**Adversary Proceeding No. 19-01037-FJB**

**MARY E. BUSCONE,**
**d/b/a FroYo To Go,**
**Debtor.**

**ANN TRACY BOTELHO,**
**Plaintiff-Appellee,**

**v.**

**MARY E. BUSCONE,**
**Defendant-Appellant.**

**Appeal from the United States Bankruptcy Court**
**For the District of Massachusetts**
**(Hon. Frank J. Bailey, U.S. Bankruptcy Judge)**

**Before**
**Godoy, Harwood, and Fagone,**
**United States Bankruptcy Appellate Panel Judges.**

**David G. Baker, Esq., on brief for Defendant-Appellant.**
**Thomas C. LaPorte, Esq., on brief for Plaintiff-Appellee.**

**December 21, 2021**

**Fagone, U.S. Bankruptcy Appellate Panel Judge.**

Ann Tracy Botelho filed a complaint seeking a determination that the debt owed to her by Mary E. Buscone was excepted from discharge in Buscone's chapter 7 case. Buscone responded with a motion to dismiss, arguing that judicial estoppel barred Botelho's complaint because Botelho had failed to disclose, in Botelho's own chapter 7 case, the existence of her claim against Buscone. After this effort failed, the litigation devolved into a bitter discovery dispute resulting in the entry of a default judgment against Buscone and the imposition of monetary sanctions against her attorney.

Buscone now appeals from the default judgment and several interlocutory orders preceding that judgment. For the reasons discussed below, we **AFFIRM** all the challenged rulings except to the extent they imposed sanctions against Buscone's attorney. The appeal of those rulings is **DISMISSED** for lack of jurisdiction because Buscone lacks standing to appeal them.

## BACKGROUND

I.     **Relevant Events Pre-Dating the Filing of Buscone's Bankruptcy Case**

Buscone and Botelho entered into a partnership to operate T & M Desserts, which did business as FroYo To Go from July 2012 through January 2014. In October 2014, Botelho filed a chapter 7 bankruptcy petition. Although the parties' partnership had ended in turmoil, Botelho did not list a claim against Buscone on her schedules. Botelho received a chapter 7 discharge and her case was closed soon after.

Several years later, Botelho commenced a state court action against Buscone. After Buscone failed to respond, a default judgment was entered against her.[1] Botelho then recorded a judicial lien against Buscone's residence in the amount of $92,669.

## II.        Proceedings in Buscone's Bankruptcy Case

The recording of the lien prompted Buscone to commence a chapter 7 case. Buscone scheduled Botelho as a judgment creditor holding an undisputed claim of $91,673. On Buscone's motion, the bankruptcy court avoided Botelho's lien, and, in due course, Buscone received a chapter 7 discharge.

### A.        The Adversary Proceeding

In the meantime, Botelho commenced an adversary proceeding seeking a determination that the debt owed to her was excepted from Buscone's chapter 7 discharge. In her complaint, Botelho alleged that she had contributed $31,000 to T & M Desserts from her savings "to pay for startup costs" and that she loaned the partnership another $95,000 to cover outstanding obligations. Botelho further alleged that she later withdrew the rest of her savings, including retirement funds, to defray other obligations of the partnership, and that Buscone failed to repay her as agreed and, in fact, used partnership funds to pay for her daughter's college tuition. Botelho sought a determination of nondischargeability under §§ 523(a)(2)(A) and 523(a)(4).[2]

---

[1]  Although the default judgment is not included in the record, the state court docket indicates the amount of that judgment was $91,673.45. See United States v. Mercado, 412 F.3d 243, 247 (1st Cir. 2005) (taking judicial notice of state court docket entries); see also Stevenson v. TND Homes I, LP (In re Stevenson), 583 B.R. 573, 575 n.3 (B.A.P. 1st Cir. 2018) (same).

[2]  References to "Bankruptcy Code" or to specific statutory sections are to 11 U.S.C. §§ 101-1532, unless otherwise noted. References to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure and references to "Rule" are to the Federal Rules of Civil Procedure.

**B.     Buscone's Motion to Dismiss**

Buscone moved to dismiss the complaint on judicial estoppel grounds, asserting that Botelho's failure to list any claim against Buscone in Botelho's bankruptcy schedules barred the nondischargeability action. Botelho countered by asserting that her failure to disclose Buscone's debt had been inadvertent. Botelho submitted an affidavit, indicating she "had no idea" she was required to disclose contingent or unliquidated claims.

**C.     The Order Converting the Motion to Dismiss and the Order Denying Summary Judgment**

The court announced in an order following a hearing that it would treat the motion as one for summary judgment under Rule 12(d) and authorized Buscone to file additional supporting material. Buscone submitted a response in support of summary judgment, challenging Botelho's explanation that she "lack[ed] knowledge about what she must disclose" as "implausible." Relying heavily on Guay v. Burack, 677 F.3d 10 (1st Cir. 2012), Buscone asserted that the two requirements for application of judicial estoppel were present: successful reliance on one position in a prior judicial proceeding (i.e., Botelho's chapter 7 case), and the assertion of a conflicting position in a second proceeding (i.e., the adversary proceeding).[3]

The bankruptcy court entered an order denying Buscone's motion (the "Order Denying Summary Judgment"), ruling:

> The Court having converted the Defendant's Motion to Dismiss [#15] to one for summary judgment; the motion being based on an affirmative defense; the party bearing the burden of proof as to the defense having submitted no evidence; the Court being bound for purposes of summary judgment to view the evidence in the light most favorable to the non-moving party, which in this instance would require the Court to assume that the omission in question was unknowing and not intended to deceive; and the standard for judicial estoppel being less than wholly

---

[3] In the meantime, the court reopened Botelho's chapter 7 case and she amended her Schedule B to add a $90,000 contingent claim against Buscone. Botelho also filed an affidavit in the case, stating she "did not purposely or knowingly omit any claims" from her schedules.

settled and, in any event, involving considerable judicial discretion; the Motion to Dismiss, now as motion for summary judgment, is hereby denied[.]

### D. The Seeds of the Discovery Dispute

In November 2019, the court entered an order setting a deadline for the completion of discovery. That order warned: "The parties and counsel shall cooperate during all aspects of discovery. Failure by any party or counsel to make required disclosures or cooperate in discovery *may warrant the imposition of sanctions under Fed. R. Civ. P. 37*." (emphasis added). Upon a series of joint motions, the court later extended the discovery deadline several times.

A deposition of Buscone was suspended in March 2020, apparently due to her failure to appear. The following week, Botelho propounded her first discovery request upon Buscone, consisting of 7 interrogatories, 16 requests for admission, and a request for production of documents. In June 2020, Botelho served a second set of interrogatories on Buscone consisting of 3 interrogatories apparently left unanswered from the first set of interrogatories. On the same date, Botelho also served a second request for production of documents. After Buscone failed to produce the requested documents, Botelho reported the failure to the court, resulting in an off-the-record conference and an order authorizing Botelho to "file discovery motions."

### E. Botelho's First Motion to Compel

In September 2020, Botelho filed a motion to compel under Rule 37 (the "First Motion to Compel"), seeking reimbursement of attorney's fees, sanctions, and other relief for Buscone's failure to comply with discovery obligations. Botelho stated that Buscone still had not produced documents in response to certain requests for production or answers to specific interrogatories. Accompanying Botelho's motion was the affidavit of her attorney, Thomas LaPorte, indicating that Botelho had "unnecessarily incurred" nearly $10,000 in attorney's fees due to Buscone's failure to comply with discovery. After Buscone filed a motion to strike the First Motion to

5

Compel, LaPorte filed a supplemental affidavit, seeking additional attorney's fees of more than $2,000. Buscone then responded to Botelho's outstanding interrogatories with unresponsive answers. For example, in response to an interrogatory asking Buscone to "describe all communications . . . relating to the decision to transfer" Botelho's personal funds to the partnership, Buscone responded, in part: "I cannot possibly answer this question with any semblance of accuracy or certainty." In response to Botelho's request that Buscone supplement her response to all prior interrogatories, Buscone answered: "I have no idea what you are talking about."

**F.      The Order Granting the First Motion to Compel and Buscone's Response**

In October 2020, following a telephonic hearing, the bankruptcy court entered an order granting the First Motion to Compel (the "Order Granting First Motion to Compel"), explicitly directing Buscone to "serve a written response that fully complies with [Rule] 34 . . . to [Botelho's] requests for production of documents #10-14 and to produce any and all documents responsive to such requests on or before October 20, 2020." The court also ruled that any objections to those requests were deemed to have been waived by virtue of Buscone's "failure to timely respond to the request even after a motion to compel was on file." The Order Granting First Motion to Compel further provided:

> Pursuant to [Rule] 37(a)(5)(A), made applicable by [Bankruptcy Rule] 7037, the Court finding the Plaintiff attempted in good faith to resolve the matter without court action, the Defendant's failure to timely respond to discovery requests or appear for her scheduled deposition was not substantially justified, and no other circumstances exist to make an award of expenses unjust, the Court must require the Defendant, or her counsel, to pay the Plaintiff's reasonable expenses incurred in making the motion, including attorney's fees. The Defendant's counsel shall pay, or reimburse the Plaintiff, for the cost of the stenographer hired for the unattended deposition, and pay the Plaintiff's attorney's fees in the amount of $500 for the same. With respect to the additional attorney's fees and costs

6

incurred in making this motion . . . , the Defendant shall file any response on or before October 20, 2020 at 4:30 PM so the Court may make a determination as to the reasonableness of those expenses.

Finally, in the event Botelho "require[d] further relief concerning pending discovery requests," the court authorized her to "seek such relief by motion" without first seeking an off-the-record conference.

Buscone filed a response to Botelho's request for attorney's fees, contending that Botelho "did *not* make a good faith attempt to resolve the matter without court action," and that any fee award "was unjust." She added that her failure to comply with discovery was due to her attorney's confusion regarding the numbering of the discovery requests, which amounted to excusable neglect under Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, 507 U.S. 380, 388 (1993). Buscone did not, however, serve the discovery responses within the time frame required by the Order Granting First Motion to Compel.

### G. The Second Motion to Compel

Botelho then filed a second motion to compel (the "Second Motion to Compel"), seeking reimbursement of additional attorney's fees and a default judgment against Buscone under Rule 37. As grounds, Botelho stated that she had not received any responses or documents in connection with the "outstanding Rule 34 Requests." She also listed five examples of "non-responsive and inappropriate" answers received from Buscone relating to the second set of interrogatories. Botelho requested reimbursement for the additional attorney's fees incurred in connection with the Second Motion to Compel.[4] In addition, Botelho requested a default

---

[4] In the Second Motion to Compel, Botelho sought reimbursement of fees in the total amount of $10,920.00, which included compensation for hours previously submitted to the court. Although the derivation of this figure is difficult to reconcile with the record, that difficulty is not germane to the outcome here.

judgment against Buscone on account of the "flippant," "willful" conduct of Buscone and/or her attorney, David Baker.

In her objection to the Second Motion to Compel, Buscone challenged the amount of Botelho's additional fee request. She also persisted in objecting to the substance of Botelho's discovery request, even though the court had already deemed such objections waived.

## H.     The Hearing on the Second Motion to Compel

At a hearing on the Second Motion to Compel in November 2020 (the "November 2020 Hearing"), LaPorte represented that Buscone had failed to comply with the Order Granting First Motion to Compel. Specifically, he asserted that Buscone failed to comply with the court's order directing her to respond to five specific requests for production of documents and that the answers to certain interrogatories were "evasive" and "sarcastic." The court then inquired of Baker: "[W]hy shouldn't I enter a default judgment against your client . . . under Rule 37 for a failure to abide by clear orders of the Court?" Baker responded: "[B]ecause we believe she did comply with the order of the court." Highlights from the ensuing colloquy follow:

> THE COURT: There's document requests out there. It has a number of . . . enumerated document requests, including Nos. 10 through 14. My order required a response by October 20th.
>
> Did you file a Rule 34 written response by October 20th?
>
> MR. BAKER: Yes, the responses were misnumbered, though, which is part of the confusion.
>             . . . .
>
> THE COURT: . . . Mr. Baker, did you file a Rule 34 response by October 20th to . . . Requests for Production 10 through 14? And I . . . warn you, Mr. Baker, to be very, very careful now with your response.
>
> MR. BAKER: My response is that I believe that we did . . . and our responses are . . . set forth in the motion . . . .

THE COURT: Forget about the motion. . . .

So . . . if I order you right now to produce to me a copy of your Rule 34 written response, you're going to be able to do that? . . .

MR. BAKER: Yes. It will have the wrong numbers, but yes.
. . . .

THE COURT: I believe that you . . . have made misrepresentations to me today . . . . I don't need to hear any more. This is not appropriate behavior. . . .
. . . .
I'm going to give you one last chance. Did you or did you not -- and tell me the truth -- . . . serve a Rule 34 compliant written response pursuant to my order with respect to Requests for Production 10 through 14? Yes or no.

MR. BAKER: No. My mistake.

Then, focusing on Botelho's attorney's fees in connection with the First Motion to Compel, the court asked Baker to identify the amount he considered "reasonable," given that the court had already allowed fees but had yet to quantify them. Baker responded: "At most, $5,440.50." LaPorte countered that his client was seeking $13,500, which included the cost of preparing for the hearing on the First Motion to Compel.

## I. The Order Quantifying Fees, the Order Granting Second Motion to Compel, and the Default Judgment

After the hearing, the court entered an order quantifying the attorney's fees awarded by the Order Granting First Motion to Compel (the "Order Quantifying Fees"). Specifically, the court found that Botelho had reasonably incurred approximately $6,800 in attorney's fees in connection with the First Motion to Compel. The court further found that Buscone's counsel was responsible for the discovery failures that gave rise to that motion and therefore ordered Baker to pay Botelho those fees (plus the $500 previously awarded in connection with the unattended deposition).

9

On the same date, the court entered another order (the "Order Granting Second Motion to Compel"), this one granting Botelho's request for additional fees and a default judgment set forth in the Second Motion to Compel. The court found that Buscone had failed to comply with the discovery obligations clearly memorialized in the Order Granting First Motion to Compel. The court also found that Buscone had been given notice that Botelho was seeking entry of a default judgment as a discovery sanction and had received an opportunity to argue for a lesser penalty. In considering Botelho's request for default judgment, the court reasoned:

> Pursuant to [Rule] 37(b)(2)(A), made applicable hereto by [Bankruptcy Rule] 7037, when a court finds that a party has failed to obey an order to provide discovery, the court may impose sanctions. To determine whether a discovery sanction is appropriate, courts must evaluate the totality of circumstances giving rise to the failure. See Mulero-Abreu v. Puerto Rico [Police Dep't], 675 F.3d 88, 93 (1st Cir. 2012). "Procedurally, the court should consider (1) whether the offending party was given sufficient notice, and (2) whether the offending party has been given the opportunity to explain its noncompliance or argue for a lesser penalty." AngioDynamics, Inc. v. Biolitec AG, 991 F. Supp. 2d 283, 290 (D. Mass. 2014), aff'd, 780 F.3d 429 (1st Cir. 2015). In applying this test, some of the factors courts may consider are "the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness *vel non* of the misconduct, mitigating excuses, prejudice to the other side and to the operation of the court, and the adequacy of lesser sanctions," as well as any other relevant factors. Robson v. Hallenbeck, 81 F.3d 1, 2-3 (1st Cir. 1996). These factors help distinguish good faith attempts to comply with discovery obligations from deliberate, bad faith refusals to do so. See Benitez-Garcia v. Gonzalez-Vega, 468 F.3d 1, 5 (1st Cir. 2006). The factors serve as a guide, however, and need not be applied mechanically. See id.
>         . . . .
>
> The Defendant and her counsel have provided no creditable argument for her failure to comply. The Court finds that the Plaintiff has been and continues to be prejudiced by the Defendant and her counsel's failure to follow even the most basic requirements of the discovery rules. The Plaintiff cannot be expected to prosecute a case in which she has the burden of proof where the Defendant and her counsel have failed to respond to discovery for many months and then obfuscated the issues when called upon to answer for this avoidance. The Defendant has not argued the adequacy of lesser sanctions. In the Court's view, lesser sanctions are simply inadequate under the circumstances. The Court has already shifted fees to the Defendant and her counsel for discovery abuses [#96], but the Defendant and her counsel were unmoved by those sanctions.

10

> Pursuant to [Rule] 37(b)(2)(A)(vi), one of the sanctions a court may impose on a recalcitrant party is to enter a default judgment against her. This Court is highly reluctant to . . . enter such a serious sanction and has rarely, if ever done so. But based on the findings above, the Court has determined that entry of default judgment against the Defendant is fully warranted. Default judgment shall enter by separate order.

The court also granted Botelho's request for attorney's fees incurred in connection with the Second Motion to Compel under Rule 37(b)(2)(C), finding that Buscone's failure to comply with the Order Granting First Motion to Compel was not substantially justified and that no other circumstances rendered an award of expenses unjust. The court further found that Botelho had incurred reasonable attorney's fees in the amount of $2,356 in connection with the Second Motion to Compel and that Buscone's counsel was responsible for the discovery failures that gave rise to that motion. For this reason, the court ordered Baker to pay Botelho fees in that amount.

The Order Quantifying Fees and the Order Granting Second Motion to Compel were followed, in short order, by the issuance of a default judgment (the "Default Judgment"). The Default Judgment excepted Buscone's debt to Botelho, in the amount of $91,673, from Buscone's discharge.

### J.     The Reconsideration Motion

Fourteen days later, Buscone filed a motion seeking reconsideration of the Order Denying Summary Judgment, the Order Quantifying Fees, the Order Granting Second Motion to Compel, and the Default Judgment (the "Reconsideration Motion"). In support, Buscone submitted a three-part memorandum of law over the course of nine days. In her initial memorandum, Buscone continued to cite Guay for the proposition that Botelho's failure to

11

schedule Buscone's debt had been "a deliberate omission" warranting dismissal of Botelho's complaint. Buscone also challenged Botelho's production requests as overly broad and not proportional to the needs of the case. In the second installment of her memorandum, Buscone maintained that Botelho's counsel had "manufactured" the discovery dispute in bad faith. In the third and final installment, Buscone argued that the court did not examine the "legitimacy" of her excuse for failing to comply with discovery requests as required by the First Circuit in AngioDynamics. She averred that her failure to comply with discovery was neither "repeated" nor "willful" but, rather, the product of confusion about the crux of the dispute which persisted even during the November 2020 Hearing. Buscone insisted that no monetary sanctions were warranted and that the court had neglected to consider a "less drastic" alternative to default judgment. Finally, citing Cambio v. Mattera (In re Cambio), 353 B.R. 30 (B.A.P. 1st Cir. 2004), Buscone argued that the bankruptcy court lacked jurisdiction to enter a money judgment. Based on these contentions, Buscone concluded that "the court erred on both the law and the facts in reaching its decisions" and that reconsideration was warranted.

Botelho opposed the Reconsideration Motion. To dispel the notion that any confusion was at the root of the parties' discovery dispute, she asserted the bankruptcy court "very clearly, on the record, ordered" Buscone during the November 2020 Hearing to produce responses to requests for production of documents numbers 10-14.

### K. The Order Denying Reconsideration

The court entered an order denying the Reconsideration Motion (the "Order Denying Reconsideration"), noting that Buscone had "not asserted grounds under" or "even cited to" Bankruptcy Rule 9023 or 9024 to warrant reconsideration of the orders in question. As for the

12

Order Denying Summary Judgment, the court added that the reconsideration request was untimely. And, finally, citing Chen v. Huang (In re Huang), 509 B.R. 742 (Bankr. D. Mass. 2014), the court opined that it was authorized to "determine the amount of a claim in a nondischargeability action." The court added: "In any event, the amount listed in the Default Judgment . . . is the amount listed in the Debtor-Defendant's Schedule E/F as undisputed."

**POSITIONS OF THE PARTIES**

### I.     Buscone

Buscone's notice of appeal identifies five orders: the Order Denying Summary Judgment, the Order Quantifying Fees, the Order Granting Second Motion to Compel, the Default Judgment, and the Order Denying Reconsideration. Her arguments on appeal relate to some, but not all, of the challenged orders and, as discussed below, the omissions in her brief affect the scope of our review.

First, in an attack on the Order Denying Summary Judgment, Buscone cites Guay and asserts that "a failure to identify a claim as an asset in a bankruptcy proceeding is a prior inconsistent position that may serve as the basis for application of judicial estoppel," barring the debtor from pursuing the claim in a later proceeding. Buscone also continues to challenge Botelho's credibility.

Second, insisting that it "is overstating things to say that there was a discovery 'dispute,'" Buscone maintains that the court should not have entered the Default Judgment. Buscone claims she "did the best she could to comply with discovery requests" and refrained from asking the court to quash or modify any of the requests, even though they were, in her view, "largely abusive." She insists that at the November 2020 Hearing both parties expressed confusion about what, precisely, was at the heart of their dispute. She also claims that the bankruptcy court made

13

no "principled analysis" of the Second Motion to Compel or of the standard governing the entry of default judgment as a discovery sanction.

Third, Buscone argues the bankruptcy court lacked jurisdiction to determine the amount of the Default Judgment. She continues to rely on Cambio as support for this proposition, while simultaneously challenging the holding of Boudreau v. United States (In re Boudreau), 622 B.R. 817 (B.A.P. 1st Cir. 2020). Even if the bankruptcy court had jurisdiction to determine the amount of the debt, she adds, it should have conducted an evidentiary hearing instead of relying on the amount listed in her schedules. In her view, bankruptcy schedules cannot be used to establish the amount of a debt but merely the existence of a claim. And, although she listed an undisputed obligation to Botelho on her schedules, Buscone now claims she did not owe Botelho anything.

Citing Ashcroft v. Iqbal, 556 U.S. 662 (2009), Buscone finally argues that the Reconsideration Motion "state[d] sufficient plausible facts to justify reconsideration." Although Buscone concedes she did not cite either Bankruptcy Rule 9023 or 9024 in the motion, she claims that omission "should not make any difference" and that it should be enough to cite caselaw and to style the motion as one for "relief from judgment"—an "obvious reference" to Bankruptcy Rule 9024.

## II.    Botelho

Botelho maintains that the bankruptcy court correctly found that she did not intentionally mislead when she failed to schedule her claim against Buscone. Quoting Guay, 677 F.3d at 20, Botelho argues that "parties who fail to identify a legal claim in bankruptcy schedules may escape the application of judicial estoppel if they can show that they 'either lack[ed] knowledge of the undisclosed claims or ha[d] no motive for their concealment.'" Botelho also contends that

14

the bankruptcy court did not abuse its discretion when it imposed sanctions not only against Buscone, but also against Baker, accusing him, personally, of numerous improprieties in the conduct of discovery. Finally, Botelho asserts that the bankruptcy court properly determined the amount of Buscone's debt. In support, Botelho cites Huang, where the bankruptcy court ruled that "determinations that affect the scope of . . . discharge . . . fall squarely within the bankruptcy court's . . . jurisdiction . . . ." 509 B.R. at 753.

## APPELLATE JURISDICTION

The Panel may hear appeals from final judgments of the bankruptcy court. 28 U.S.C. § 158(a)-(c). Because the Default Judgment entered by the bankruptcy court is a final judgment, the Panel has jurisdiction to review it. See Kittery Point Partners, LLC v. Bayview Loan Servicing, LLC (Kittery Point Partners, LLC), 623 B.R. 825, 835 (B.A.P. 1st Cir. 2021) (discussing finality of judgments in adversary proceedings), aff'd, 858 F. App'x 386 (1st Cir. 2021). In general, prior interlocutory orders merge with a final judgment and may also be reviewed on appeal from that judgment. Segarra Miranda v. Banco Popular de P.R. (In re Rivera Mercado), 599 B.R. 406, 416 (B.A.P. 1st Cir. 2019). Here, the Order Denying Summary Judgment was interlocutory when entered, see Hisert v. Haschen, 980 F.3d 6, 8 (1st Cir. 2020), but later merged into, and became reviewable upon entry of, the Default Judgment. The Order Denying Reconsideration is also final because the Default Judgment is final and, together, those rulings ended the litigation on the merits. See Nieves Guzmán v. Wiscovitch Rentas (In re Nieves Guzmán), 567 B.R. 854, 861 (B.A.P. 1st Cir. 2017).

Although the Panel has statutory jurisdiction over Buscone's appeal from the Default Judgment, Buscone lacks the required pecuniary interest in two of the interlocutory orders subsumed into that judgment and challenged in this appeal. In other words, Buscone lacks

15

standing to prosecute an appeal from the two orders imposing liability for fees on her counsel, Baker.  Because these orders sanctioned Baker, personally, Buscone has "no pecuniary or . . . other sufficient interest in the award to confer standing to appeal[.]"  Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 243 (1st Cir. 2010) (alteration in original) (citation and internal quotation marks omitted); see also Marshak v. Tonetti, 813 F.2d 13, 21-22 (1st Cir. 1987) (ruling client lacked standing to appeal sanction imposed solely on attorney).

Baker would have standing to appeal the monetary sanctions imposed against him, but he is not named in the notice of appeal and, on this record, we cannot infer his intent to appeal (as distinguished from his client's intent to appeal).  Courts should, of course, "liberally construe the notice requirements set forth in Federal Rule of Appellate Procedure 3."  Lamboy-Ortiz, 630 F.3d at 243 (citation omitted); see also Fed. R. App. P. 3(c)(7) ("An appeal must not be dismissed . . . for failure to name a party whose intent to appeal is otherwise clear from the notice . . . .").  These notice requirements are "satisfied where the notice of the appeal provides sufficient notice to other parties and the courts of the party's intent to seek appellate review."  Lamboy-Ortiz, 630 F.3d at 243 (citation and internal quotation marks omitted); see also Fed. R. App. P. 3 advisory committee's note (1993 Amendments – Note to subdivision (c)) ("If a court determines it is objectively clear that a party intended to appeal, there are neither administrative concerns nor fairness concerns that should prevent the appeal from going forward").  Here, Baker never voiced any concern about the imposition of personal liability in response to the Order Granting First Motion to Compel, at the November 2020 Hearing, in the memoranda filed in support of the Reconsideration Motion, or in the briefs submitted in this appeal.  As such, we conclude that Baker did not preserve the issue for appeal and, further, never expressed an intent to personally appeal from the monetary sanctions imposed against him.  Moreover, Baker has not

appealed in his own name and Buscone lacks standing to appeal the Order Quantifying Fees and the Order Granting Second Motion to Compel, to the extent the latter imposed sanctions against Baker, personally. Accordingly, we decline to review those rulings.

Even if (a) Buscone had standing to appeal from the orders imposing sanctions against her attorney or (b) we were to construe the notice of appeal to include Baker as an appellant, we would nevertheless decline to consider any challenge to the two fee orders for one simple reason: Buscone's appellate brief says nothing about the propriety of the sanctions. The consequence of such silence is waiver of the issue. See United States v. Bayard, 642 F.3d 59, 63 (1st Cir. 2011); Ortiz v. Gaston Cnty. Dyeing Mach. Co., 277 F.3d 594, 598 (1st Cir. 2002).

## STANDARDS OF REVIEW

The entry of default judgment as a sanction is reviewed for abuse of discretion. See United States v. Klimavicius, 847 F.2d 28, 32 (1st Cir. 1988). Determinations regarding subject matter jurisdiction incident to the entry of judgment—like the bankruptcy court's determination that it had jurisdiction to enter judgment in a specific amount—are reviewed de novo. Ortiz-Espinosa v. BBVA Sec. of P.R., Inc., 852 F.3d 36, 42 (1st Cir. 2017). We cannot stop there, however, because the Default Judgment subsumed several interlocutory orders and the standard of review applicable to those orders varies. We typically review an order denying summary judgment de novo. Canzano v. Ragosa (In re Colarusso), 382 F.3d 51, 57-58 (1st Cir. 2004). The application of judicial estoppel, however, is reviewed for abuse of discretion, even when it arises in the summary judgment context. Rockwood v. SKF USA Inc., 687 F.3d 1, 10 (1st Cir. 2012). Finally, review of the Order Denying Reconsideration under Rule 59(e) is for "manifest abuse of discretion." ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008) (citation and internal quotation marks omitted).

17

**DISCUSSION**

**I.      The Order Denying Summary Judgment**

We begin our analysis with Buscone's challenge of the underlying Order Denying

Summary Judgment, as that ruling opened the door for the discovery fracas that ensued.  That is

to say, if the court had granted summary judgment, the parties would never have become

embroiled in the discovery disputes giving rise to this appeal.  Before we can assess the propriety

of the Order Denying Summary Judgment, however, we must decide whether the bankruptcy

court abused its discretion in declining to apply judicial estoppel.  See Alt. Sys. Concepts, Inc. v.

Synopsys, Inc., 374 F.3d 23, 31 (1st Cir. 2004) (explaining that de novo summary judgment

review should follow "the deferential review of a threshold judicial estoppel determination").

This is because a judicial estoppel ruling has "the potential to shape" a summary judgment

ruling.  See id.

**A.      Judicial Estoppel**

"[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion."  Id. at 30

(quoting New Hampshire v. Maine, 532 U.S. 742, 750 (2001)).  The doctrine "prevents a litigant

from pressing a claim that is inconsistent with a position taken by that litigant . . . in a prior legal

proceeding . . . ."  Id. at 32-33 (citation and internal quotation marks omitted).  In general, there

are two conditions for its application: (1) "the estopping position and the estopped position must

be directly inconsistent, that is, mutually exclusive"; and (2) "the responsible party must have

succeeded in persuading a court to accept its prior position."  Id. at 33 (citations omitted).

**B.      Summary Judgment**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial."  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822

18

(1st Cir. 1991) (citations and internal quotation marks omitted). "In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056," which "incorporates into bankruptcy practice the standards of Rule 56 . . . ." Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 762-63 (1st Cir. 1994) (citations omitted). "A party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000) (citations omitted). A fact is material and will properly preclude summary judgment if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" for summary judgment purposes only if it "is one that could be resolved in favor of either party." Cano-Rodriguez v. De Jesus-Cardona, 261 F. Supp. 3d 284, 287 (D.P.R. 2016) (quoting Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004)). When deciding a summary judgment motion, "[t]he court does not act as trier of fact . . . and so cannot superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon conflicting evidence." Id. (alteration in original) (citation and internal quotation marks omitted). "Rather, it must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Id. (citation and internal quotation marks omitted). "But the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rest upon conclusory allegations, improbable inferences, and unsupported speculation." Id. (citations and internal quotation marks omitted).

### C.    The Standards Applied

The bankruptcy court supplied two related rationales for declining to apply judicial estoppel and denying summary judgment: (1) the summary judgment standard—which requires

19

courts to view the evidence in the light most favorable to the non-moving party—"in this instance would require [it] to assume that" Botelho's omission "was unknowing and not intended to deceive"; and (2) the standard for judicial estoppel is "less than wholly settled." In this appeal, Buscone primarily focuses on the first part of the bankruptcy court's reasoning and contends that the court erred in crediting Botelho's statement that she did not intentionally omit her claim against Buscone from her schedules in her chapter 7 case. Buscone challenges the court's handling of this aspect of the summary judgment record, asserting that Botelho's statement was not credible. As for the second rationale offered by the bankruptcy court, Buscone's brief is largely silent. She does not directly address the court's characterization of judicial estoppel as "unsettled" in this context, but instead refers generally to Guay. In her reply brief, she specifically contends that the court erred in concluding that Botelho's intentions were a material issue precluding summary judgment. She quotes a footnote in Guay for the proposition that the First Circuit has "noted that deliberate dishonesty is not a prerequisite to [the] application of judicial estoppel" and has "never recognized" an exception to the doctrine's application for parties who can show that they "either lack[ed] knowledge of the undisclosed claims or ha[d] no motive for their concealment." Guay, 677 F.3d at 20 & n.7 (alterations in original) (citations omitted). She does not, however, grapple with the holding of Guay or note the distinctions between this case and Guay.

Buscone's primary challenge is easily brushed aside. The court did not err in crediting Botelho's affidavit and concluding that it gave rise to a genuine issue for trial. Botelho's statement regarding her intentions was neither inherently "incredible," see, e.g., United States v. Joost, 92 F.3d 7, 14 (1st Cir. 1996), nor "inherently implausible" and did not require an inference

20

that was "farfetched or fantastic," <u>Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr.</u>, 103 F.3d 196, 206 (1st Cir. 1996) (citations omitted).

That leaves the bankruptcy court's second reason for denying summary judgment: the court's concern that the doctrine of judicial estoppel in this context is "unsettled." Although it did not elaborate, presumably the bankruptcy court meant that, in the First Circuit, the question of whether a party may escape the judicial estoppel bar when an omission is innocent has not been definitively answered. <u>See</u> <u>Guay</u>, 677 F.3d at 20 (leaving "open" the question of whether "parties who fail to identify a legal claim in bankruptcy schedules may escape the application of judicial estoppel if they can show that they either lack[ed] knowledge of the undisclosed claims or ha[d] no motive for their concealment") (alterations in original) (citation and internal quotation marks omitted). In her opening brief, Buscone never directly addressed the bankruptcy court's characterization of judicial estoppel as "unsettled." Instead, she raised the issue for the first time in her reply brief, and even then, only obliquely. Consequently, she has waived the issue on appeal. <u>See</u> <u>Kane v. Town of Harpswell (In re Kane)</u>, 254 F.3d 325, 331 (1st Cir. 2001) ("[A]n entirely new ground of attack on the decision under review cannot be advanced for the first time in a reply brief.") (citation omitted). Buscone's several references to <u>Guay</u> in her opening brief, lacking analysis of this central question, are insufficient to rescue this issue from the bar of waiver. As the First Circuit has warned:

> It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. . . . "Judges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace."

<u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) (citations omitted); <u>see also</u> <u>Jackson v. ING Bank, FSB (In re Jackson)</u>, 988 F.3d 583, 590-91 (1st Cir. 2021) (ruling challenge to certain

21

orders was waived where appellant made "little more than cursory mention of it in her opening brief," warning that "[t]he mere mention of a challenge suffices only to waive it") (citation omitted).

Even if the issue were not deemed waived, we would conclude that the bankruptcy court did not abuse its discretion in declining to apply judicial estoppel given the doctrine's "hazy" contours. Alternative Sys. Concepts, Inc., 374 F.3d at 33. To be sure, like every other circuit to have addressed the issue, the First Circuit held in Guay that a debtor was judicially estopped from bringing claims as a result of failing to disclose them on bankruptcy schedules and affirmed summary judgment on that ground. 677 F.3d at 17, 21. After noting that several circuits have recognized a good faith defense to judicial estoppel, the circuit left the question "open," reasoning that the debtor's repeated denial of the existence of the claims in that case provided "ample basis" for concluding the debtor had a motive to conceal. Id. at 20 (citing Fifth, Sixth, and Eleventh Circuit cases acknowledging good faith defense to equitable estoppel). Although the case did "not present facts that require[d] consideration of that [good faith] exception," the court went on to observe: "We have never recognized such an exception and have noted that deliberate dishonesty is not a prerequisite to application of judicial estoppel." Id. at 20 & n.7 (citing Schomaker v. United States, 334 F. App'x 336, 340 (1st Cir. 2009)). Elsewhere, the Guay court signaled that "good faith" does not "*automatically* excuse[]" a party from judicial estoppel, which could be read to imply that good faith may in *some* instances provide a defense to the doctrine's application. Id. at 16 (emphasis added) (citation and internal quotation marks omitted). This implication would be consistent with the First Circuit's "guiding principle of judicial estoppel"—that it "should be employed when a litigant is playing fast and loose with the courts, and when *intentional* self-contradiction is being used as a means of obtaining unfair

22

advantage in a forum provided for suitors seeking justice." Patriot Cinemas, Inc. v. Gen. Cinemas Corp., 834 F.2d 208, 212 (1st Cir. 1987) (emphasis added) (citations and internal quotation marks omitted). In sum, in view of the signals packed into Guay, we will not second-guess the bankruptcy court's discretionary call in declining to employ judicial estoppel even though we might have made a different decision "if sitting as a court of first instance[.]" Negrón-Almeda v. Santiago, 528 F.3d 15, 21 (1st Cir. 2008) (citation omitted).[5]

## II.     The Order Granting Second Motion to Compel

In the Order Granting Second Motion to Compel, the court found that Buscone had disobeyed its directive to provide discovery by the deadline and that Baker was responsible for the failures which gave rise to the motion. As sanctions, the court: (1) authorized the entry of a default judgment against Buscone; and (2) ordered Baker to pay Botelho's attorney's fees in the amount of $2,356. We review the Default Judgment, but do not review the fee award because, as previously discussed, Buscone lacks standing to appeal it.

### A.     Default Judgment as a Sanction

Rule 37(b)(2) provides, in relevant part, "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court . . . may . . . render[ ] a default judgment against the disobedient party[.]" Fed. R. Civ. P. 37(b)(2)(A)(vi). This remedy is also available "where a party fails to provide answers to interrogatories or produce documents for inspection, or for failure of a party to attend its own deposition." Companion Health Servs., Inc. v. Kurtz, 675 F.3d 75, 84 (1st Cir. 2012) (citing Fed. R. Civ. P. 37(d)(3)). The entry of a default judgment "provides a useful remedy when a litigant is confronted by an obstructionist adversary and plays

---

[5] In reaching this conclusion, we adhere to the two-fold requirements imposed by Rule 56. See In re Varrasso, 37 F.3d at 764 (emphasizing that, in addition to absence of a genuine dispute over a material fact, summary judgment movant must also show entitlement to judgment as a matter of law).

a constructive role in maintaining the orderly and efficient administration of justice." Id. (citation and internal quotation marks omitted). "As this remedy is contrary to the goals of resolving cases on the merits and avoiding harsh or unfair results, the [trial] court, in its superior on-the-ground position, must balance these competing considerations before entering default." Id. (citation and internal quotation marks omitted). "The party challenging the imposition of a default judgment bears a heavy burden of demonstrating that the trial judge was clearly not justified in entering an order of default under Rule 37." Id. (citation and internal quotation marks omitted); see also AngioDynamics, Inc., 780 F.3d at 435 ("[T]his standard of review is not appellant-friendly—and a disgruntled litigant bears a heavy burden in attempting to show that an abuse occurred.") (citation and internal quotation marks omitted).

"The appropriateness of a default sanction must be evaluated on a case by case basis." Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 38 (1st Cir. 2012) (citation omitted). "This evaluation implicates the totality of the circumstances." Id. The First Circuit has identified "a non-exhaustive list of factors for consideration when reviewing a Rule 37 motion for sanctions," including: "the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions." AngioDynamics, Inc., 780 F.3d at 435 (citation omitted). A reviewing court should also consider "whether the [trial] court gave the offending party notice of the possibility of sanctions and the opportunity to explain its misconduct and argue against the imposition of such a penalty." Id.

In this case, the AngioDynamics factors weigh in favor of affirming the Default Judgment. The circumstances preceding entry of the Default Judgment reveal that Buscone had

fair warning of the possible consequences of failure to cooperate in discovery. First, Buscone had to have known that repeated discovery violations could expose her to entry of an adverse judgment. Her counsel, as a member of the bar appearing on behalf of clients in bankruptcy court, is charged with knowledge of the applicable rules. Second, as early as November 2019, the court explicitly warned that "failure by any party or counsel to make required disclosures or cooperate in discovery may warrant the imposition of sanctions under Fed. R. Civ. P. 37." Additionally, the Order Granting First Motion to Compel contained another warning, albeit less explicit, when it authorized Botelho to seek any further relief relating to discovery by filing a motion without first filing a motion seeking an off-the-record conference. This authorization should have alerted Buscone that the court's tolerance for noncompliance in discovery was wearing thin. Yet, despite these red flags, Buscone disregarded the extended discovery deadline prescribed in the Order Granting First Motion to Compel. This failure resulted in the filing of the Second Motion to Compel, whose original title and prayer for relief should have further alerted Buscone that the entry of default judgment hung in the balance.

Other factors also weigh in favor of the Default Judgment. By Baker's own admission at the November 2020 Hearing, Buscone failed to comply with the discovery deadline set in the Order Granting First Motion to Compel. Although the court gave Baker an opportunity to justify Buscone's omission during that hearing, his only explanation was that he was confused by the numbering of the production requests. That explanation is unconvincing; in the Order Granting First Motion to Compel, the court could not have been more explicit about what discovery was required of Buscone and when it was required. While a violation of a discovery order due to "simple negligence" or "misunderstanding" may not invariably justify a Rule 37 default

25

judgment, <u>Malautea v. Suzuki Motor Co.</u>, 987 F.2d 1536, 1542 (11th Cir. 1993), this case does not feature such a benign shortcoming.

"[D]isobedience of court orders, in and of itself, constitutes extreme misconduct[.]" <u>Hooper-Haas</u>, 690 F.3d at 38 (citation and internal quotation marks omitted). Here, Buscone's failure to comply with the deadline set in the Order Granting First Motion to Compel was not her only discovery violation. <u>See</u> <u>Companion Health Servs., Inc.</u>, 675 F.3d at 85 (clarifying that "a severe sanction, such as default or dismissal, is inappropriate in most cases when based on one incident") (citation omitted). She also failed to appear for her deposition, and Baker's only excuse for her absence was that he lost track of time. Moreover, the record reflects that Buscone's obstinacy in discovery persisted from March 2020 through the November 2020 Hearing, unnecessarily consuming Botelho's resources as well as the court's. That Baker did not file a motion to quash or an objection to discovery is not to his credit, as he suggests; rather, it reflects a refusal or inability to proceed in accordance with the rules governing discovery.

Buscone's multiple discovery infractions "in the face of pointed warnings and the absence of any compelling explanation," standing alone, are enough to support the bankruptcy court's imposition of default judgment as a sanction. <u>Hooper-Haas</u>, 690 F.3d at 38. But beyond that, Buscone's flouting of the Order Granting First Motion to Compel suggests that a lesser sanction would have been ineffective. Additionally, the record presents at least three aggravating factors that further tilt the scale in favor of the Default Judgment. First, the deadline prescribed in the Order Granting First Motion to Compel came only after the court had extended the deadline for completion of discovery three times. Second, Buscone's eventual answers to interrogatories were incomplete and evasive. Third, Baker's own evasiveness during the November 2020 Hearing, despite the court's explicit warnings, supports the court's conclusion

26

that the misconduct was deliberate and lacking a legitimate excuse.  Under the circumstances, the "admittedly strong interest in deciding cases on the merits was overborne by the . . . weight of aggravating factors."  Id.

Moreover, contrary to Buscone's assertion that the bankruptcy court failed to conduct a "principled examination," the plain language of the Order Granting Second Motion to Compel reflects that the bankruptcy court weighed the facts and appropriately considered this circuit's multi-factor test before concluding that the Default Judgment was warranted.  On this record, the bankruptcy court did not abuse its significant latitude in so doing.

## B.       The Default Judgment: A Sum Certain

By the terms of the Default Judgment, the court ruled that $91,673.45—the amount listed in Buscone's schedules as undisputed and the amount of the debt as determined by the state court judgment—was excepted from discharge.  Buscone argues that the bankruptcy court lacked jurisdiction to determine the amount of Botelho's claim, citing Cambio.  In that case, the panel employed a "limited jurisdiction" approach, concluding that the bankruptcy court lacked jurisdiction to enter a money judgment on a nondischargeable debt where the debt at issue was not liquidated and the facts serving as the foundation for dischargeability and breach of contract damages were not "inextricably intertwined."  In re Cambio, 353 B.R. at 33-34.  Courts within this circuit have occasionally reached the opposite conclusion and adopted a more expansive approach to jurisdiction—particularly where the amount of the debt at issue was not subject to dispute.  See, e.g., Boudreau, 622 B.R. at 821-26 (concluding that the extent of the debtor's tax liability fell within the bankruptcy court's subject matter jurisdiction in a dischargeability action where the only dispute was when certain tax returns had been filed); see also In re Huang, 509 B.R. at 753 ("[D]eterminations that affect the scope of . . . discharge necessarily 'arise in' or

27

'arise under' the Bankruptcy Code" and "fall squarely within the bankruptcy court's *core* jurisdiction, regardless of . . . whether there is a potential impact on the bankruptcy estate or the distribution to creditors."). This case is similar to Boudreau, where there was no dispute about the amount of the debt; here there can be no genuine dispute.

Buscone fails to appreciate the significance of (a) the state court judgment establishing the debt owed to Botelho and (b) the debt to Botelho that Buscone scheduled as undisputed, in a specific amount, in Buscone's bankruptcy schedules. The state court judgment, although entered by default, was a final judgment by the time Buscone filed her chapter 7 case. The bankruptcy court could have properly relied on the judgment to establish the debt, and Buscone has failed to explain why an evidentiary hearing was necessary.[6] Despite Buscone's protestations to the contrary, a hearing is not required prior to entry of default judgment unless the court deems it necessary to determine the amount of damages. See Fed. R. Civ. P. 55(b)(2) (providing the court "may conduct hearings" before entry of a default judgment "when . . . it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter"). Where, as here, the amount of damages is for a sum certain and capable of mathematical calculation, no hearing on damages was necessary. See id. Even if we were to ignore the state court judgment establishing the debt (and there is no principled reason to do that), Buscone's scheduling of Botelho's debt as undisputed constituted a judicial admission that was binding on her unless and until amended.

---

[6] Buscone cites Smith Barney, Inc. v. Strangie (In re Strangie), 192 F.3d 192 (1st Cir. 1999), for the proposition that Massachusetts law does not provide preclusive effect to a default judgment. We read Strangie differently: the question there involved a summary judgment granted without opposition against one of three defendants in a lawsuit. See id. at 194. The judgment was not afforded preclusive effect because it was not a *final* judgment, not because it was a judgment entered by *default*.

See Am. Express Bank, FSB v. Askenaizer (In re Plourde), 418 B.R. 495, 505 n.13 (B.A.P. 1st Cir. 2009). Buscone could not have contradicted the figure set forth in her schedules during an evidentiary hearing, and therefore cannot complain that the bankruptcy court should have offered her such a hearing before entering the Default Judgment for a sum certain.

### III. The Order Denying Reconsideration

Buscone did not identify the applicable authority for the relief she requested in the Reconsideration Motion. Although she cites Iqbal on appeal, that case does not control here. Because Buscone filed the Reconsideration Motion within 14 days of the issuance of the Default Judgment, it is properly treated as a motion to alter or amend a judgment under Bankruptcy Rule 9023. Ramirez Rosado v. Banco Popular de P.R. (In re Ramirez Rosado), 561 B.R. 598, 607 (B.A.P. 1st Cir. 2017); see also Fed. R. Bankr. P. 9023 (making Rule 59(e) largely applicable to cases under the Bankruptcy Code). "[R]econsideration of a previous order is an extraordinary remedy that must be used sparingly because of interest in finality and conservation of scarce judicial resources." In re Ramirez Rosado, 561 B.R. at 607 (citation and internal quotation marks omitted). "In practice, [R]ule 59(e) motions," and by extension Bankruptcy Rule 9023 motions, "are generally denied because of the narrow purpose for which they are intended." Id. at 608 (citation and internal quotation marks omitted). "In order to be successful on a Rule 59(e) motion, the moving party must establish 'a manifest error of law or present newly discovered evidence.'" Id. (citation omitted). "The moving party cannot use a Rule 59(e) motion to cure its procedural defects or to offer new evidence or raise arguments that could and should have been presented originally to the court." Id. (citation and internal quotation marks omitted); see also Markel Am. Ins. Co. v. Díaz-Santiago, 674 F.3d 21, 32 (1st Cir. 2012) ("[A] party moving for Rule 59(e) relief may not repeat arguments previously made during summary judgment, nor may

it present new arguments on a Rule 59(e) if such arguments could, and should, have been made before the judgment issued.") (citations and internal quotation marks omitted). The trial court "enjoy[s] considerable discretion" in deciding a motion to alter or amend a judgment. ACA Fin. Guar. Corp., 512 F.3d at 55.

Here, the record reveals that Buscone neither established a manifest error of law nor presented newly discovered evidence, despite having taken the liberty of submitting her Reconsideration Motion in three lengthy installments. Her arguments on reconsideration were either a regurgitation of arguments previously made or arguments that should have been made but were not. All in all, the memoranda supporting the Reconsideration Motion amount to little more than attempts to remedy Buscone's repeated discovery failures. Accordingly, we discern no abuse of discretion in the bankruptcy court's refusal to grant the extraordinary relief requested. See Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014) ("A motion for reconsideration is not the venue to undo procedural snafus . . . .") (citation omitted).

## CONCLUSION

For all of the foregoing reasons, we: (1) **AFFIRM** the Order Denying Summary Judgment; (2) **AFFIRM** the Default Judgment; (3) **AFFIRM** the Order Denying Reconsideration; (4) **DISMISS** the appeal of the Order Quantifying Fees for lack of jurisdiction; and (5) **AFFIRM** the portion of the Order Granting Second Motion to Compel granting default judgment against Buscone and **DISMISS** on standing grounds the appeal of the portion of that order imposing a monetary sanction against Baker.

30